## AMERICAN SURETY COMPANY OF NEW YORK
### vs.
## HORACE L. SPICE.

*Court of Appeals: points not raised below. Bankrupt Act of
1898: judgments excluded from benefit of discharge;
actions for fraud, etc. Fiduciary capac-
ity: failure to account.*

Questions are not open for review by the Court of Appeals that
do not appear by the record to have been made or considered
in the Court below.                                         p. 2

A judgment of a surety against the principal for money paid
for and on account of a default of the latter in his contract
with his employer, is not a judgment in an action for fraud
or created by the debtor's fraud, etc., so as to be excluded
from the benefit of discharge under sec. 17 of the Bankrupt
Act of 1898.                                                p. 7

Failure to account is not necessarily a fraudulent failure.  p. 7

The term *fiduciary capacity* as used in sec. 17 of the Bankrupt
Act of 1898, refers to technical and express trusts and
excludes conversions and frauds by commission men, brokers,
agents, parties, etc., and other implied trusts.            p. 9

*Decided December 5th, 1912.*

Appeal from the Baltimore City Court (DOBLER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*James U. Dennis* (with a brief by *Dennis & Dennis*), for the appellant.

*Wm. H. Hudgins* and *James E. McEvoy, Jr.* (with whom was *W. Howard Gahan* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court, passed April 20th, 1912, striking out a judgment of fiat rendered March 12th, 1901, in favor of the appellant against the appellee. The record in the present case embraces all the proceedings from the institution of the original suit between the parties, down to the order here appealed from.

It appears that on August 10th, 1888, the appellant sued the appellee in assumpsit in the Baltimore City Court. The *narr.* contained the common counts for money payable, and a special count alleging that the defendant, the present appellee, was an insurance agent, and in that capacity desired to represent certain insurance companies named in the *narr.*, and that the plaintiff, the present appellant, upon the application of said insurance companies, and in the course of its usual business as a guarantor, guaranteed said companies against loss which they might sustain from the dishonesty or culpable negligence of the defendant while acting as their agent, this guarantee being given for a valuable consideration, and in further consideration that the defendant should contract to indemnify the plaintiff against loss by reason of such guarantee, and that the defendant did so contract with the plaintiff, and thereafter became the agent of said companies, and while so engaged, defaulted, and failed to account to said companies for money received by him as their said agent, whereby the plaintiff was compelled to pay large sums of money to said companies by reason of such default. The pleas were: (1) Never indebted as alleged; (2) never promised as alleged; (3) that plaintiff never paid said companies any money, at defendant's request, or which it was legally compellable to pay them, and (4) that he did not know

AM. SURETY CO. OF N. Y. vs. SPICE.    3

Md.]                    Opinion of the Court.

in fact that the plaintiff had ever paid said companies any money on his account, and issue was joined on these pleas. Testimony was taken in New York City under a commission, and extracts from the bond given one of these companies is embraced in the return of said commission and is incorporated in the record in this case. One of the conditions of this bond was that the guarantor should make good any loss sustained by the company "by reason of any act of fraud or dishonesty on the part of the agent in connection with the duties of the office or position herein referred to." The trial resulted in a judgment for the plaintiff for $5,409.62.

Two writs of *scire facias* were issued on this judgment, one on February 2nd, 1901, returnable to the February return day, and the other on February 12th, 1901, returnable to the March return day, both of which were duly returned *"nihil"*, and on March 12th, 1901, judgment of *"fiat executio"* was entered.

On January 13, 1912, the defendant therein moved to strike out this judgment, assigning as a reason, that on March 23, 1909, he, being then a resident of the State of Iowa, was adjudicated a bankrupt by the United States District Court for the Southern District of Iowa and subsequently received a discharge from all debts contracted by him prior to the institution of proceedings in bankruptcy, provable under the bankrupt act, and not excepted by such statutes from the effect of such discharge; that the plaintiff's judgment against him was returned to the Bankrupt Court, in the list of defendant's debts, together with the last address of the plaintiff known to the defendant. That he had never since assumed or promised to pay said judgment.

That he had no notice of the *scire facias* proceedings mentioned, or of the judgment of *fiat* thereon until September, 1911. That his said discharge in bankruptcy would have been a good and valid defence to the *scire facias* under which the judgment of *fiat* was obtained, but because of want of notice of the pendency of the same, and without fault or laches on his part, no opportunity was allowed him to plead

such discharge, and the deposition of the defendant was taken February 28, 1912, in due form supporting the facts alleged in the motion. The plaintiff answered the motion to strike out the judgment of *fiat,* alleging only that the discharge mentioned "was not good and complete defence to said *scire facias,* the debt represented by said judgment being excepted from the operation of said discharge by the provisions of section 17 of the Bankruptcy Act of the United States passed in the year 1898, and for other reasons to be shown at the hearing," and on April 20th, 1912, an order was passed striking out the judgment of *fiat.*

The appellant first contends that the appellee was guilty of laches in not filing his motion to strike out until January, 1912, eleven years after the judgment of *fiat,* and for this he cites *Gorsuch* v. *Thomas,* 57 Md. 339, but it is manifest from the language of that case, that laches could not be urged except where the defence, made the ground of the application, could have been produced and made available as against the *scire facias* by the use of proper care and diligence. Moreover, it does not appear from the record that this point was made or considered in the Court below, and it is therefore not open for review here.

If the method of proceeding is questioned in this case, that is settled by the cases of *Starr* v. *Heckart,* 32 Md. 267, and *George* v. *Jones,* 80 Md. 298. In the former case, the original judgment in question was recovered in 1858 in Anne Arundel county, and in 1859 the judgment debtor removed to Baltimore, and was finally discharged under the insolvent law the same year. In 1866 a *scire facias* was issued on the judgment, and a *fiat,* was entered after two returns of *nihil.* It was held that the discharge was a good and valid defence to the *scire facias* by the insolvent debtor, he being without fault or laches on his part, no opportunity having been allowed him to plead the same. The proceeding in that case was by bill for injunction to restrain an execution issued and levied on his property, and the Court observed that in some cases relief might be obtained by a summary

motion to strike out the judgment, or to quash the execution, if one should be issued, but held that in that case the equitable jurisdiction of the Court was properly invoked. In the latter case, *Jones* v. *George, supra,* the Court expressly approved the proceeding by motion to strike out the judgment in order to give the defendant an opportunity to plead the statute of limitations to the original judgment, although it was seventeen years after its rendition.

"The question before us is thus reduced to this: Was the defendant's discharge in bankruptcy on March 23rd, 1900, a valid defence to the *scire facias* upon the original judgment of March 26th, 1889, and this depends upon the construction to be given to sec. 17 of the Bankruptcy Act of 1898, which, so far as relates to the case before us, is as follows: Section 17, Debts not Affected by a Discharge."

"A discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as * * * (2) are *judgments* in actions for fraud, or obtaining property by false pretenses or false representations, or for wilful and malicious injuries to the person or property of another * * * or (4) were created by his fraud, embezzlement, misappropriation or defalcation, *while acting* as an officer, *or in any fiduciary capacity.*" (*U. S. Compiled Statutes,* 1901, page 3428).

The natural construction of this Act would seem to be (1) that *whenever* the debt has been *reduced to judgment* before the discharge is obtained, then, *only such judgments* are excepted from the operation of the discharge, as were obtained in actions for fraud, or for obtaining property by false pretenses or false representations, or for wilful and malicious injuries to the person or property of another; and (2) that *whenever* the debt has *not* been reduced to judgment before the discharge is obtained, *then,* only such debts are excepted from the operation of the discharge, as were created by the debtor's fraud, embezzlement, misappropriation or defalcation, *while acting as an officer or in any fiduciary capacity.* The distinction that is made, is between

debts that have, and those that have not, been reduced to judgment and in each of these classes, certain exceptions are made based upon differing considerations.

The provable debt in this case being a *judgment,* the only proper inquiry is whether it comes within the class of *judgments,* exempted from the operation of the discharge. In determining this (and inverting the order of the exceptions) it is obvious that the judgment was not obtained in an action for wilful and malicious injuries to the person or property of another; nor in an action for obtaining property by false pretenses or false representations. The only remaining exception is where the judgment was obtained in an action for fraud, and there the test is whether the *action was one for fraud,* and not whether a different action *one for fraud* might have been brought if the creditor had so elected.

Looking then to the record of the original case we find the form of action was assumpsit, the form appropriate for breach of an agreement not under seal, but wholly inappropriate for recovery on a tort, or a fraud. The *narr.* avers that the defendant contracted and agreed "with the plaintiff to indemnify *it* against all expenses it might sustain under *its independent contract* of guaranty with the insurance companies; that the defendant had made default under *his contract with the companies,* and had failed and refused to perform his independent contract with the plaintiff to repay to *it,* whatever it should be required to pay on his account to said companies. The account, or bill of particulars attached to the *narr.,* is an ordinary open account such as is responsive to a demand for particulars, under the common counts, without any suggestion of fraud as an element in the case. The pleas were those appropriate to an action of contract, but would not have been permitted in an action sounding in tort. The words *"fraud,"* or "fraudulent," nowhere occur in this *narr.* To be availed of for any purpose, fraud must be distinctly charged and proved, and cannot be inferred here from the allegation that the defendant defaulted and failed to account properly to his principal. Failure to account

properly is not necessarily a *fraudulent* failure, and is often attributable to misfortune, unmixed with fraud, and it is to be noted here that there is no averment that the defendant had embezzled or misappropriated any moneys which the plaintiff had been required to pay to said companies. We do not think therefore that action can be held to be an action for fraud, as is essential under the section we are considering to except the judgment from the operation of the statute.

We have not been referred to, nor have we found any case in conflict with the view we have expressed that section 17 of the Act 1898 broadly distinguished between debts which had, and those which had not, been reduced to judgment before discharge, but there are numerous cases, both in the State and Federal Courts, in which are discussed the question whether a given judgment was one "for fraud" and there may be some difficulty in reconciling these various cases. The principle established, however, by the best considered cases is thus stated in *Collier on Bankruptcy* (3rd Ed.), 195: "Clause 2 of Section 17 does not except from the effect of the discharge *claims* created by fraud, or by obtaining property by false statements or by wilful or malicious injury to the person or property of another, but does except *judgments* rendered upon causes of action of that nature. The judgment, read in connection with the pleadings upon which it is based *must establish the fact* that the claim sued on, and merged in the judgment, was created through fraud, or by false pretenses or by wilful or malicious injury to the person or property of another."

In *In re Rhutassel,* 96 Fed. Rep. 597, the judgment under consideration was obtained upon two promissory notes and the Court said the judgment was founded on the express promise to repay the money loaned by the bank," and in reply to the argument of the bank that the notes were procured by false property statements, said: "If the Bankrupt Act provided that *claims* created by fraud, false statements or false pretences, were excepted out from the bar of a discharge, then the mere fact that the claim had been put into

judgment would not preclude the holder thereof from proving its original or essential nature in order to enable the Court to determine whether it came within the exceptions of the statute."

In *Hargadine-McKittrick Dry Goods Co.* v. *Hudson,* 111 Fed. Rep. 361, the Court cited the earlier Act, and said: "If the question at bar had arisen under the section just quoted, a decided conflict of authority might readily be cited but the present law reads as follows" (quoting section 17 of 1898), and then said, "the difference in language is striking. Under the old law no *debt* created by the fraud or embezzlement of the bankrupt was discharged by the proceedings in bankruptcy, but in the present Act it is *'judgments* in actions for fraud' which are not released by the discharge in bankduptcy * * *. The Legislature had some object in view in making this change. Its object therefore must have been to change the law in this respect * * * Where a note is founded in fraud two remedies exist. The holder may waive the contract and sue for the fraud, or he may sue upon the note and waive the fraud. The plaintiff in this case chose the latter course and took its judgment on the notes. Under this statute it must be bound by that record, and cannot go back of it." This is equivalent to saying that the judgment must have been in an action *ex delicto* grounded on the fraud, and not in an action *ex contractu* where a fraud might have been incidentally shown.

But even if it were competent to go behind the record of the judgment in this case it would not avail the appellant, since it is settled by the decisions that only such debts (whether reduced to judgment or not) created by the fraud of a bankrupt as were so created while he was acting as an officer or in a fiduciary capacity, are excepted from the operation of a discharge in bankruptcy. It will be sufficient for that purpose to cite *Crawford* v. *Burke,* 195 U. S. 176, where the question was carefully considered. It is not contended here that the defendant was acting as an *"officer,"*

and it can not be successfully contended that he was acting in a *"fiduciary capacity."* *Collier on Bankruptcy,* Vol. 2, sec. 2785, lays it down as settled law that this term refers to technical or express trusts and "excludes conversions and frauds by commission men, brokers, agents, partners, etc., and other implied trustees."

Numerous authorities sustaining this text are collected in a foot note by the author. Among these is, *In re Wenman,* a conversion by a ticket agent of proceeds of sales of tickets, reported in 16 Am. Bankrupt Rep. 691. In *Crawford* v. *Burke, supra,* it was held that stock brokers who converted to their own use, shares of stock held by them for a customer, on an account, crediting him with amounts received as margins, and charging him commissions and interest, were not acting in a fiduciary capacity, and that the debt was not excepted from the effect of the discharge, and the Court said such had been the view of that Court ever since the case of *Chapman* v. *Forsyth,* 2 Howard, 202.

This case was argued for the appellants with zeal and ability, but we have not been able to agree with the argument, and for the reasons stated the order will be affirmed.

> *Order affirmed, with costs to the appellee*
> *above and below.*