Grafton,
May 1, 1928.

ANTOINETTE GEHLEN *v.* SHIRLEY GALE PATTERSON.

*Fred S. Wright* and *George W. Pike* (by brief and orally), for the plaintiff.

*Roy Brackett* (by brief and orally), for the defendant.

ALLEN, J. The exceptions require no discussion and are overruled. P. L., *c.* 315, *s.* 7; *Glover* v. *Baker*, 76 N. H. 261; P. L., *c.* 334, *s.* 9; *Morgan* v. *Joyce*, 66 N. H. 476, and cases cited.

The claim that the defendant's discharge in bankruptcy did not release him from liability in the action depends upon the construction to be given the bankruptcy act. The provision to be considered is that "A discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as . . . are liabilities for obtaining property by false pretenses or false representations . . ." Bankruptcy act of 1898, *s.* 17, as amended by act of 1903. The general question presented is whether the fraud in obtaining the loan for which the note was given is now a liability for which recovery may be had, and as subsidiary thereto are the questions of the enforcement of recovery in the present action and of the effect of the proof of claim in the form of the judgment debt against the bankrupt's estate.

As to the latter question, at the outset some confusion and difficulty is met from the cases of *Stewart* v. *Emerson*, 52 N. H. 301, and *Lund* v. *Bull*, 76 N. H. 132, and attention is to be given their force and scope. *Stewart* v. *Emerson* dealt only with a discharged bankrupt's liability in an action of contract induced by fraud, and it held that as the bankruptcy act then in force exempted from discharge debts "created by" fraud, the liability continued. In *Lund* v. *Bull* the creditor proved his claim against the bankrupt's estate as a contractual liability and then sued for the fraud out of which the contract arose. The bankruptcy act at that time in force exempted from discharge "liabilities for obtaining property" by fraud, and as the plaintiff's claim was of that nature, it was held undischarged. But it was also held that if the proof of claim against the bankrupt's estate was made with full knowledge of the fraud, there was an election to make the

claim one of contract and a waiver of the tort, so as to bar the action of deceit, which, however, might be amended to one of assumpsit wherein the fraud might be proved. The case thus appears to present the novel and singular situation in which a liability for fraud cannot be enforced in an action brought directly on account of it, but may be indirectly in connection with another form of action.

But in *Friend* v. *Talcott*, 228 U. S. 27, which was an action for deceit in a sale of goods, for the unpaid price of which the plaintiff had proved against the defendant's bankrupt estate his claim in contractual form on which he had received part payment under a confirmed composition agreement, it was pointed out that the proof of claim is not an election, that although a claim is provable and proved as a contractual liability, the act itself bars the discharge of liability for fraud in connection with it, and that the theory of election and waiver, being therefore unreal, is not to be invoked. The court after considering the relevant sections of the bankruptcy act says (*p.* 39): "It is apparent that the exemptions do not rest upon any theory of the exclusion of the creditor from the bankrupt act or of deprivation of right to participate in the distribution, but solely on the ground that, although such rights are enjoyed, an exemption from the effect of the discharge is superadded." And also (*p.* 40): ". . . the exemptions from discharge which are given by the statute are found in a section devoted to that subject, and are stated in words, as we have said, to be exemptions from discharge allowed in favor of provable debts; that is, debts entitled to participate, which are given the benefit of an exemption from the operation of the discharge."

In compliance with the rule that the decisions of the federal courts of last resort are binding as to federal questions and that such questions include the construction and effect of federal statutes (*Crugley* v. *Railway*, 79 N. H. 276, 277; 15 C. J. 933, and cases cited), *Lund* v. *Bull* is accordingly overruled on the point that proof of claim in a given form against a bankrupt's estate is any waiver of remedies in other forms.

It follows that the proof of claim here did not affect the plaintiff's right to show that the defendant is under liability for obtaining money from her by fraud.

Nor was there an election of remedies in suing on the note rather than for the fraud. The plaintiff had two causes of action which were separate and independent, and she had more than a choice between them. Suit on one was not inconsistent with suit on the other. Suit for the fraud would not destroy liability on the note but on the con-

trary would affirm it. Conversely, suit on the note did not affect or necessarily raise the issue of fraud. While payment of one claim might liquidate in full or in part the damages for the other, yet until such payment both claims may be sued on at the same time and, under what seems the better procedure, judgments be obtained in both. The judgments would not mutually conflict, although satisfaction of one would operate to satisfy in full or in part the other. "Where the remedies afforded are inconsistent, it is the election of one that bars the other; where they are consistent, it is the satisfaction which operates as a bar." *Frederickson* v. *Nye*, 110 Oh. St. 459. Parallel situations are found in the frequent instance of separate suits at the same time on a note and in foreclosure of its security, and in separate actions against joint wrongdoers.

The test is not whether the causes of action arise out of the same general subject-matter, but whether one action produces a status which necessarily bars the other. In example, assumpsit for the value of converted property confirms the defendant's title so as to bar trover, and an action of deceit in the sale of property confirms the sale so as to bar rescission and the right to return the property and recover its price. "It is the inconsistency of the demands that makes the election of one remedial right an estoppel against the assertion of the other, and not the fact that the forms of action are different." *Frederickson* v. *Nye, supra*. See also *Schwarzschild &c. Co.* v. *Shapiro*, 182 Ill. App. 40; *New York Land &c. Co.* v. *Chapman*, 118 N. Y. 288; *Dilley* v. *Bank*, 108 Ark. 342; *Zimmern* v. *Blount*, 238 Fed. Rep. 740; *Bacon* v. *Moody*, 117 Ga. 207; *Black* v. *Miller*, 75 Mich. 323; *Whittier* v. *Collins*, 15 R. I. 90; *Mallory* v. *Leach*, 35 Vt. 156; *Standard &c. Co.* v. *Owings*, 140 N. C. 503.

It follows that neither the action on the note nor the present action on the judgment-debt barred an action for the fraud, any more than the proof of claim against the defendant's bankrupt estate. And the fraud may be pleaded to save the judgment from its release by the discharge in bankruptcy.

Section 17 of the bankruptcy act of 1898 provided in part as follows: "A discharge . . . shall release a bankrupt from all of his provable debts, except such as . . . (2) are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another; . . . or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

It thus appears that congress regarded official and fiduciary fraud as less deserving of relief by a discharge than fraud in obtaining property in other than official and fiduciary relations. *Crawford* v. *Burke,* 195 U. S. 176. In respect to official and fiduciary frauds the language of the 1867 act was taken and followed, and claims created by such frauds not being exempted by the discharge, the construction given to the 1867 act in *Stewart* v. *Emerson, supra,* is to be followed in the consideration of claims for such frauds under the 1898 act. *Brown* v. *Hannagan,* 210 Mass. 246.

By the 1903 amendment, clause (2) of section 17 was changed to read as follows: "(2) are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another, or for alimony . . . maintenance . . . seduction . . . or for criminal conversation . . ." Aside from its purpose to add to the list of the kinds of claims which a discharge should not release, it did away with the requirement that liability for fraudulently obtaining property should be reduced to judgment before the bankruptcy to save it from release under the discharge.

While in a strict and literal observance of the language of the section and its amendment liabilities which are exempted from the discharge must be provable debts against the bankrupt's estate, the general purpose of the amendment to give a bankrupt no relief from conduct in fraudulently obtaining property is not to be restricted by drawing distinctions between the use of the word "liabilities" in clause (2) and its omission in clause (4) of the section as amended. The 1867 act provided broadly that "no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged. . . ." Clause (4) of section 17 of the 1898 act was intended to readopt this provision as to official and fiduciary fraud, and the 1903 amendment was intended to enlarge the exemption from discharge to include claims for fraudulently obtaining property. The difference of language in the two clauses of the section after its amendment is not enough to indicate an intention of difference of treatment between the respective forms of fraud affected by the clauses. By the amendment it was intended to remove the distinction between them made in the 1898 act, and the comparison of moral delinquency in fraud in obtaining property according to its commission by one while acting or not acting in an official or fiduciary capacity was no longer regarded as important enough to be made a test of relief. It follows that liabili-

ties for fraudulently obtaining property, as intended by the amendment, mean claims arising out of such conduct. Whatever may be the form of action sued on, if it appears that the cause of action arose from such fraud as the section specifies, the liability set forth in the action is undischarged. *Lund* v. *Bull, supra; Raymond* v. *Cohen,* 80 N. H. 586. Claims created by the fraud of one acting in an official or fiduciary capacity are not discharged whether or not they are "provable debts" at the date of bankruptcy (*Brown* v. *Hannagan, supra*), and it must be equally true that the discharge of liabilities for fraudulently obtaining property otherwise does not depend upon their status as such debts. The test is not of ability to show that at the date of bankruptcy there was a provable claim of fraud, but is of ability to show that there was then a provable liability of some kind which sprang from the bankrupt's fraud. *Zimmern* v. *Blount,* 238 Fed. Rep. 740; *Gregory* v. *Williams,* 106 Kan. 819.

Here the note was reduced to judgment before the bankruptcy and the action is on the judgment debt. But if the note was a liability for fraud in the sense that the loan for which it was given was obtained by fraud, no less is the judgment such a liability. The note became merged in the judgment, but the fact that the loan it represented was thus obtained applies to the judgment debt as much as to the note. That the plaintiff should suffer by having reduced the note to judgment before the bankruptcy would be to impose a vicarious penalty which congress is not to be assumed to have intended in the absence of language clearly showing such a purpose. In *Brown* v. *Hannagan, supra,* recovery was allowed in equity on a judgment for a contractual liability when the liability grew out of the defendant's fraud while acting in a fiduciary capacity and when the judgment antedated the bankruptcy.

*Case discharged.*

All concurred.