## LEVIN *v.* SINGER

[No. 49, September Term, 1961.]

*Decided November 20, 1961.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*David I. Abse',* for appellant.

*Samuel B. Groner,* with whom was *Beverly Anne Davis* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

This appeal requires the determination, for the first time in this State, whether or not, in an action against a discharged bankrupt based on a judgment obtained against him before the discharge, brought on the ground that the debt is one resulting from false representations, evidence extrinsic to the record of the case in which the judgment was obtained may be considered in order to ascertain whether the ground relied upon is supported by the facts. The trial court decided that

such evidence could properly be submitted to the jury. From a judgment entered on the jury's verdict in favor of the plaintiff (appellee), the defendant (appellant) appeals.

The question whether the appellee's judgment survives the appellant's discharge in bankruptcy grows out of the provisions of § 17 of the Bankruptcy Act of 1898, as amended, 11 U.S.C. 35, which reads in pertinent part:

> "(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for wilful and malicious injuries to the person or property of another * * * or (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity * * *."

The relevant facts in this case had their inception in 1955. The appellant, Abraham H. Levin, and one Edward R. Kammer were operating an enterprise known as the Kammer Painting Company as a partnership. Without reviewing the facts in great detail, we think it can be fairly deduced from the record that in the fall of that year the business was overextended, badly managed and in financial difficulties; that Levin interested the appellee, Joseph R. Singer, in joining with him and Kammer in forming a corporation to take over the enterprise, which was to be operated together by Levin, Kammer and the appellee; that Levin did not inform the appellee of the existing shaky condition of the business, but instead told him, according to the latter, that the enterprise was "in a very solvent position and that it was a going concern", and again that it was "a fine going business which was expanding and that they needed capital with which to get further contracts and it was a glorious opportunity for someone to come in with him".

Appellee requested a statement showing the financial condition of the business, and stated that Levin said he would furnish one within two or three days. The parties met again a few days later, on October 5, 1955, when, after further

assurances from Levin, and an excuse that he hadn't had time to prepare a financial statement, appellee executed an agreement with Levin and Kammer. While, oddly, the agreement, as well as certain other relevant documents, do not appear in either the record extract or the record before us, it is apparent from the testimony that the October 5, 1955, agreement provided that appellee was to have a $10,000 interest in the painting business which was to be incorporated, with shares to be held by the parties to the agreement. Simultaneously with the signing of the agreement, appellee delivered to Levin $5,000 in cash and two promissory notes, one for $2,000 payable at 60 days and the other for $3,000 payable at five months. However, it was agreed that appellee made advance payments amounting to $4,000 by December 5, 1955, making a total, with the original payment of $5,000, of $9,000 paid over by him. Levin admitted that he deposited the Singer money in a checking account standing in the names of himself and his wife, which he stated was also used for the business. The business was never incorporated and appellee never received a financial statement.

In the following January it became obvious that the enterprise was a failing proposition. Appellee engaged counsel to protect his interests and, after negotiation, appellant on April 25, 1956 executed and delivered a promissory note in favor of appellee and his wife for $9,200, payable in monthly installments, intended to represent the total obligation due them from appellant. At the same time a policy of insurance on the life of appellant was taken out by him and assigned to the Singers. After appellant made a few monthly payments on the note and defaulted, the Singers sued him on the note in the United States District Court for the District of Columbia and obtained judgment on July 30, 1957, for $9,505.51, representing the unpaid balance plus interest and attorney's fee.

Appellant subsequently filed a petition in bankruptcy in the United States District Court for the District of Maryland, including the claim of the Singers in his schedule of indebtedness. On December 29, 1958 appellant was granted his discharge in bankruptcy.

In June, 1959, Singer and his wife filed the instant suit

against Levin in the Circuit Court for Montgomery County on the District of Columbia judgment. Levin pleaded denial of liability and discharge in bankruptcy. The Singers' replication alleged that the debt sued upon was a liability for obtaining money by false pretenses or false representations and was created by fraud, embezzlement, misappropriation or defalcation of Levin while acting in a fiduciary capacity. At the trial, over objection of Levin, the court permitted appellee to introduce evidence extrinsic to the record of the judgment tending to show that the debt underlying the note and the judgment arose out of false representations, one of the reasons established by 11 U. S. C. 35 (a) as exempting a "liability" from discharge. At the conclusion of appellee's case the trial court granted appellant's motion for a directed verdict against appellee's wife because she was not a party to the business agreement but refused the motion as to the appellee. Following the jury verdict for appellee the court denied appellant's motion for a judgment n.o.v. or in the alternative a new trial. Judgment for $9,780 and interest was entered in favor of appellee and this appeal followed.

The principal question presented is (1) whether the trial court erred in permitting appellee to go behind the judgment of the District Court based upon the promissory note and introduce evidence *dehors* the record to show the nature of the debt represented by the note. Subsidiary questions raised by appellant are: (2) That under the Federal Rules of Civil Procedure the appellee was required to rely on all alleged grounds of recovery for his claim and having elected to rely upon the note, and having reduced the claim to judgment, appellee is estopped from reopening the judgment to show that the debt was the result of appellant's fraud; (3) that the "full faith and credit" clause of the federal Constitution does not permit examination of the merits of a claim reduced to judgment in a foreign jurisdiction; (4) that the judgment is *res judicata* as to the judgment creditor so as to prevent the trial court from considering anything *dehors* the record of the court in which the judgment was taken; (5) that a novation was effected between the parties which constituted an accord and satisfaction of the claim arising out of the entire prior

transactions of the parties and a valid bar and defense to the present action; (6) that the appellee failed to establish a *prima facie* case that the money had been obtained by appellant by false representations and that the trial court was therefore in error for refusing to direct a verdict for the appellant against the appellee and for allowing the jury to find a verdict on the basis of the evidence presented.

(1)

As to the main contention, appellant states his position clearly, that the "record of the court in which judgment was taken is decisive as to the nature and character of the claim covered by such judgment and in determining whether a debt reduced to judgment is dischargeable under the Bankruptcy Act, the court may not go outside the record of the proceedings in the court which entered the judgment." There is a line of decisions in other States that support this view. See, for example, *Jacobs v. Beatty,* 138 N. E. 2d 657 (Ohio 1956); *Shawano Finance Corp. v. Haase,* 30 N. W. 2d 82 (Wis. 1947); *Lawrence v. Wischnowsky,* 100 N. E. 2d 816 (Ill. 1951); *Wegiel v. Hogan,* 100 A. 2d 349 (N. J. 1953); 170 A.L.R. 374 (citing earlier cases from several other jurisdictions).

The appellee counters with the proposition that the judgment creditor should be permitted to show, by evidence extrinsic to the record of the judgment proceedings, the undischargeable character of the original debt, when the record of the judgment does not itself show that it is based on a debt not dischargeable in bankruptcy. There are also cases in other jurisdictions which support this view: *Greenfield v. Tuccillo,* 129 F. 2d 854 (2nd Cir. 1942); *Fidelity & Casualty Co. v. Golombosky,* 50 A. 2d 817 (Conn. 1946); *U. S. Credit Bureau v. Manning,* 305 P. 2d 970 (Calif. 1957); *Fireman's Fund Indemnity Co. v. Caruso,* 90 N. W. 2d 302 (Minn. 1958); *Gregory v. Williams,* 189 Pac. 932 (Kan. 1920); *Young v. Grau,* 14 R. I. 340 (1884).

It may be helpful to review the legislative history of the provisions of the Bankruptcy Act relating to the discharge of debts. The Bankruptcy Act of August 19, 1841, 5 Stat. 440,

§ 1, (repealed in 1843), included as eligible for discharge only "* * * debts, which shall not have been created in consequence of a defalcation as a public officer; or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity * * *."

The re-enactment of the Bankruptcy Act on March 2, 1867, 14 Stat. 517, R. S. 5117, § 33, provided that

"* * * no *debt* created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged under this act * * *." (Emphasis supplied.)

The Bankruptcy Act of July 1, 1898, 30 Stat. 544, 550, § 17 a, clause (2), provided as exceptions from discharge

"* * * *judgments* in actions for frauds, or obtaining property by false pretenses or false representations, or for wilful and malicious injuries to the person or property of another * * *." (Emphasis supplied.)

The Bankruptcy Act of 1903, 32 Stat. 798, § 5, enacted the provision with which we are concerned in this case, substantially as it appears at the beginning of this opinion. The most significant change was the substitution of "liabilities" for "judgments" in clause (2) of § 35 (a) of 11 U. S. C.

We have no Maryland decision construing the effect of the 1903 act. Appellant relies on one case from this state, *American Surety Co. of N. Y. v. Spice,* 119 Md. 1, 85 Atl. 1031 (1912), which may appear at first glance to offer support for his view. However, analysis of the case reveals that the Court considered only the applicability of the *1898 act* to a judgment revived by *scire facias* in 1901, where an intervening discharge in bankruptcy was pleaded, and neither considered nor mentioned the amendment of 1903 enlarging exemption from discharge to "liabilities" based on false representations, etc., in place of "judgments". In holding that, under the 1898 act, the judgment was not excepted from the effect of the discharge, the Court said, at p. 8:

56

"In *Hargadine-McKittrick Dry Goods Co. v. Hudson*, 111 Fed. Rep. 361, the Court cited the earlier Act, and said: 'If the question at bar had arisen under the section just quoted, a decided conflict of authority might readily be cited but the present law reads as follows' (quoting section 17 of 1898), and then said, 'the difference in language is striking. Under the old law no *debt* created by the fraud or embezzlement of the bankrupt was discharged by the proceedings in bankruptcy, but in the present Act it is *"judgments* in actions for fraud" which are not released by the discharge in bankruptcy * * *. The Legislature had some object in view in making this change. Its object therefore must have been to change the law in this respect * * * Where a note is founded in fraud two remedies exist. The holder may waive the contract and sue for the fraud, or he may sue upon the note and waive the fraud. The plaintiff in this case chose the latter course and took its judgment on the notes. *Under this statute* it must be bound by that record, and cannot go back of it.' * * *" (We added last emphasis; all others in original.)

The Court also said, at pp. 7-8:

"In *In re Rhutassel*, 96 Fed. Rep. 597, the judgment under consideration was obtained upon two promissory notes and the Court said the judgment was founded on the express promise to repay the money loaned by the bank, and in reply to the argument of the bank that the notes were procured by false property statements, said: 'If the Bankrupt Act provided that *claims* created by fraud, false statements or false pretenses, were excepted out from the bar of a discharge, then the mere fact that the claim had been put into judgment would not preclude the holder thereof from proving its original or essential nature in order to enable the Court to determine whether it came within the exceptions of the statute.' " (Emphasis in original.)

In view of the rationale of the cases cited in the *Spice* case, it seems likely that the Court would have reached a different conclusion if it had been considering the change of wording from "judgments" to "liabilities" effected by the 1903 amendment. In any event, the case would seem to have no authority in support of appellant's argument in the instant case.

The parties in oral argument have sought to attach the elusive label of "majority view" to their own respective views. The legal sources tend to favor the appellant's view as reflecting the opinion of the majority of jurisdictions. However, we shall be concerned not with the weight to be accorded to each view as measured by the number of states that have adopted the one or the other, but rather with the weight to be assigned to each on the basis of sound legal reasoning. In our view, the balance on the basis of soundness and legal persuasiveness is plainly in favor of the authorities supporting the appellee's position. The leading and oft-cited case expressing this view is *Fidelity & Casualty Co. v. Golombosky, supra*. The Connecticut Supreme Court of Errors had before it a fact situation which paralleled the one before us in all essential points. That court, in resolving the case in favor of the defrauded creditor, stated at pp. 819-820 of 50 A. 2d:

> "The decisions which have held that in determining the nature of the indebtedness a court cannot go behind the judgment and record seem generally to have overlooked two principles which the cases place beyond dispute: Where an action is brought upon a note, and a discharge in bankruptcy is set up as a defense, proof is admissible to show that the underlying debt was created by fraud or one of the other excepted causes, American Surety Co. v. McKiearnan, 304 Mich. 322, 8 N. W. 2d 82, 145 A.L.R. 1235, and note, 1238; Zimmern v. Blount, 238 F. 740, 745, 151 C. C. A. 590; and the rendition of a judgment upon an obligation does not change the character of the indebtedness. Boynton v. Ball, 121 U. S. 457, 466, 7 S. Ct. 981, 30 L. Ed. 985; Brown v. Hannagan, supra; Guernsey-Newton Co. v. Napier, 151 Wash. 318, 320, 275 P. 724; Argall v.

Jacobs, 87 N. Y. 110, 113, 41 Am. Rep. 357; Wade v. Clark, 52 Iowa 158, 159, 2 N. W. 1039, 35 Am. Rep. 262; Young v. Grau, supra. In the light of these accepted principles, there would seem to be no escape from the conclusion that the rendition of a judgment based upon a note does not preclude proof by evidence extraneous to the record, in reply to a defense of discharge in bankruptcy, that the underlying debt was created by fraud, embezzlement, misappropriation or defalcation within the exception we are considering. Moreover, some of the decisions above cited falling within the first category seem to regard proof that the debt was created by one of these causes by means of evidence dehors the record of the case in which the judgment was rendered as involving an attack upon that judgment; that clearly is not so; the plaintiff sues upon the judgment, the defendant pleads a defense entirely extraneous to the action in which the judgment was rendered, i. e., his discharge, and the plaintiff attacks his right to avail himself of that defense; the plaintiff is in no sense attacking the judgment but is throughout insisting upon his right to recover upon it in the manner and form in which it was rendered. * * *"

In subscribing to this view, we feel that it more clearly and reasonably accomplishes the purposes intended by Congress by the Bankruptcy Act than does the view advanced by appellant and the authorities he cites. The obvious purpose of the act is to grant a discharge of honest debts to honest debtors. *Williams v. U. S. Fidelity Co.*, 236 U. S. 549 (1915). The act clearly did not extend its remedial purpose so as to grant discharges to those who have dishonestly misappropriated funds. The intent of Congress in enlarging the protection afforded to the defrauded creditor is made plain by the 1903 amendment substituting the word "liabilities" for "judgments". It is evident that the legislative purpose was to broaden the class of claims under § 17 a of the 1898 act

that should be considered non-dischargeable on the ground of fraud, etc., and certainly not to narrow such class of claims.

There is little dispute over the proposition that in an action on a note alone, proof is permitted that the underlying debt was created by one of the exceptions enumerated in § 35 (a), and that this nature of the debt will defeat a defense of discharge in bankruptcy of the note. See *American Surety Co. v. McKiearnan,* 8 N. W. 2d 82 (Mich. 1943) and annotation in 145 A.L.R. 1238. To penalize the claimant because he took the further step of obtaining a judgment seems not only inequitable but also in derogation of the obvious intent of Congress in enacting the 1903 amendment. It would, furthermore, tend to discourage the prompt prosecution of a claim. See *Gehlen v. Patterson,* 141 Atl. 914 (N. H. 1928). As the Connecticut court stated in the *Fidelity & Casualty Co.* case, *supra* (at page 820 of 50 A. 2d) : "Indeed, when the note is accepted, it is probably far from the mind of the creditor that the debtor may become bankrupt, and the clemency which the former has extended to the latter in not pressing the fact of the misappropriation might, if the law were otherwise than we hold, result in the discharge of the obligation. Under the view we take, the creditor has the burden of proving that, in such a case, the note did represent money misappropriated, and the debtor will have the opportunity to defeat that claim by showing, for example, that he gave it, not because he had in fact misappropriated the money, but merely 'to buy his peace.' "

While the Supreme Court of the United States has not passed upon this precise question, there was strong dictum in the case of *Strang v. Bradner,* 114 U. S. 555 (1885), cited in the *Fidelity & Casualty Co.* case, *supra,* tending to support the view we have here adopted. In that case the plaintiffs had obtained a judgment prior to the bankruptcy of the defendant, upon a claim based on fraudulent misrepresentations. In holding that such a claim was excepted from the effect of defendant's discharge in bankruptcy under the 1867 act, the Supreme Court said at p. 560:

"* * * But had the plaintiffs waived their right to claim damages specifically for the deceit practised

upon them, and made a claim against the estate of the bankrupts based wholly upon their legal obligation to save plaintiffs harmless on account of their being the makers and indorsers of the notes in question, or if the present action had been based upon that obligation, and not upon the fraud committed by defendants, it would not follow that the defendants would be protected by their discharges in bankruptcy; for, the statute expressly declares that a discharge is subject, even in respect of claims provable in bankruptcy, to the limitation that no *debt created by the fraud* of the bankrupt shall be discharged by the proceedings in bankruptcy, and that *a debt so created* may be proved, and the dividend thereon shall be a payment *on account of such debt.* * * * It is, therefore, clear that, whether the claim asserted by the plaintiffs is regarded as one arising out of the deceit or fraud of the defendants, or as a debt created by their fraud, the discharges in bankruptcy do not constitute a defence."

We think the authorities cited express the better rule, and therefore hold that it was not error for the trial judge to permit the appellee to offer proof, by evidence extrinsic to the record of the judgment obtained by appellee on the note, that the debt which the note represented was created by the false representations of the appellant.

Appellant's next three contentions, which are subsidiary to the main question just discussed, lose their force in light of the view we have adopted.

(2)

The doctrine of election of remedies, which is the gist of this contention, prohibits a party, having a choice of two or more remedies, from selecting one and, after a judgment is rendered on the merits, then seeking to recover on the other remedy. *City of Baltimore v. Moore,* 209 Md. 516, 121 A. 2d 857 (1956). This may well be the effect of Rule 8, Federal Rules of Civil Procedure. See 2 *Moore, Federal Practice* (2nd ed.), § 2.06 (3). But here the appellee is not suing on

a new cause of action, but rather on the judgment he has already obtained. He has introduced evidence extrinsic to the record only to defeat the special defense of discharge interposed by the appellant. The note upon which the judgment was based was evidence of the debt created by appellant's alleged false representations, and the alleged false representations were set up not as a new cause of action, but to avoid the defense of discharge in bankruptcy raised by the appellant himself, by showing the true *nature* of the debt for which the note was given. See *Gehlen v. Patterson, supra,* 141 Atl. 914 (N. H. 1928), and cf. *Gregory v. Williams, supra,* 189 Pac. 932 (Kan. 1920) ; *Young v. Grau, supra,* 14 R. I. 340 (1884) ; *Fidelity & Casualty Co. v. Golombosky, supra,* 50 A. 2d 817 (Conn. 1946).

### (3)

This same line of reasoning answers appellant's argument alleging violation of the "full faith and credit" clause of the federal Constitution. The doctrine "\* \* \* precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles involved, and the judgment is conclusive as to all questions in controversy and all defenses which might have been interposed with proper diligence. \* \* \*" *Coane v. Girard Trust Co.,* 182 Md. 577, 580, 35 A. 2d 449 (1944). But here the appellee is not attacking the judgment at all, nor is he seeking a review of the merits of the action upon which it is based. He in fact insists on his right to recover under the judgment, and again, the extrinsic evidence he introduces is directed at the special defense of discharge raised by the appellant himself, necessitating proof by the appellee that his debt was of such character as to come within the exceptions set out in § 35 (a) of 11 U. S. C. Under such circumstances the judgment does not foreclose an investigation into the *nature* of the obligation. *United States Credit Bureau v. Manning, supra,* 305 P. 2d 970 (Calif. 1957). Where the record fails to disclose the *nature* of the claim, it may be proved *aliunde. Greenfield v. Tuccillo, supra,* 129 F. 2d 854 (2nd Cir. 1942).

### (4)

The same reasons are fatal to the defense of *res judicata* raised by appellant. The doctrine, which bars any further action between the same parties or their privies on the same cause of action once a judgment has been rendered as to the original claim, is not applicable here. Appellee was not seeking to reopen the judgment or to sue on a new cause of action on the same claim but in fact relied on the judgment and offered the extrinsic evidence for the reasons set out above.

### (5)

The contention that a novation occurred between the parties to this suit, thus extinguishing any former claim of the appellee founded on false representations, is not sustainable.

The thrust of appellant's argument is that a novation was effected by the note and policy of insurance which were accepted, it is claimed, in lieu of the promise to appellee that a corporation would be formed in pursuance of the October 5, 1955, agreement. Any claims appellee had under the agreement, according to appellant's theory, were merged into the new obligation and "forever extinguished." As further evidence of the novation, it is pointed out that the new obligation was between different parties, Mr. Kammer no longer being a party and Mrs. Singer becoming a new party. It is argued that novation can occur by change of parties alone.

Whether a negotiable bill or note effects a substitution or novation of one debt for another depends upon the clear, definite intention on the part of all concerned that such is the purpose, and such an intention will not be presumed. *County Trust Co. v. Stevenson,* 170 Md. 550, 185 Atl. 435 (1936). See also 6 *Corbin, Contracts,* § 1298, and cf. *Cole, Adm'x, etc. v. Wilbanks,* 226 Md. 34, 171 A. 2d 711 (1961).

We find nothing in the record to show any intention by the parties that the note, along with the assignment of the insurance policy, was to constitute a new obligation, extinguishing the old agreement. On the contrary, the appellee's theory of the case (which we think was amply supported by evidence obviously believed by the jury) was that the giving of the note (and the insurance policy) by the appellant was *in rec-*

*ognition* of the fact that he had obtained the appellee's money by false representations. Thus it is apparent that the note was not intended to extinguish the existing obligation, but rather to constitute evidence of it and of the amount due thereon, and hence no novation or substitution occurred.

Mere change of parties alone does not necessarily effect a novation, as appellant contends, but is merely one of the elements considered. See 6 *Williston, Contracts,* (Rev. Ed.) § 1865. In the case cited by appellant, *Visitation Academy v. Schapiro,* 169 Md. 332, 181 Atl. 731 (1935), this Court considered the change of parties as one of the elements to be taken into account, and not in itself enough to effect a novation.

### (6)

Appellant maintains that the only grounds relied on by appellee to show false representations are the failure of the parties to form a corporation with diligence as was originally agreed upon when appellee invested his money, and the failure of appellant to furnish appellee with a financial statement "within a few days", as was promised on several occasions. Appellant maintains that there was no showing of damage to the appellee as a result of the failure to incorporate and issue a financial statement and at worst these factors amounted to nothing more than a promise to do something in the future and hence were not a valid basis for an action based on fraud, and that therefore a verdict should have been directed for him.

We recognize that fraud cannot be predicated on statements which are merely promissory in nature, or upon expressions as to what will happen in the future. *Appel v. Hupfield,* 198 Md. 374, 84 A. 2d 94 (1951). However, the representations made in the instant case go beyond this. There was testimony by the appellee indicating that the financial statement was to be given by the appellant as an immediate part of the original transaction. The testimony of appellant, however, shows that he apparently had no intention to issue the statement until the following year. This Court has held that the existing intention of a party at the time of contracting is a matter of fact, and the rule has been adopted in this State that fraud

may be predicated on promises made with a present intention not to perform them. *Tufts v. Poore,* 219 Md. 1, 147 A. 2d 717 (1959). This record reveals evidence sufficient, if believed, to support a finding that appellant had a pre-existing intention not to apprise the appellee of the financial condition of the business by not issuing the financial statement, thereby causing appellee to part with his money to his damage.

Furthermore, the argument of appellant ignores the positive testimony by appellee that appellant made false representations as to existing facts, namely, that the business was "in a very solvent position" and "a fine going business which was expanding", when in fact it was then in shaky condition, and actually foundered three months later. At the time the statements were made this relatively small enterprise owed a very substantial debt of $19,000 to a paint supplier on what should have been an ordinary current account, as well as lesser debts, including approximately $4,000 overdue on withholding taxes. In addition, the funds of the business were deposited in a bank account in the names of appellant and his wife, and personal funds of the appellant were mixed with those of the business in the same account. All these factors make appellant's failure to supply a financial statement to appellee significant. This evidence was properly submitted to the jury so that it could consider whether appellant intentionally concealed material facts in order to obtain appellee's money. Where such concealment effectively suppresses material facts with the object of creating or continuing a false impression, a cause of action based on fraud may arise. *Fegeas v. Sherrill,* 218 Md. 472, 147 A. 2d 223 (1958).

No appeal was noted from the action of the trial court in directing a verdict against Mrs. Singer, and therefore the correctness of that ruling is not before us.

Having found no error below, we will affirm.

*Judgment affirmed; appellant to pay the costs.*