No. 20437.

WILLIAM D. MILLER *v.* PAUL RUSH.
(393 P.2d 565)

Decided June 22, 1964.    Rehearing denied July 13, 1964.

Messrs. HOLLAND and HART, Mr. DWIGHT K. SHELLMAN, JR., for plaintiff in error.

Mr. MILTON BERGER, Mr. SIDNEY BIDERMAN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HALL.

ON October 12, 1955, Miller, as purchaser, and Rush, as seller, entered into a written contract whereby Rush agreed to sell and Miller agreed to purchase Plot 6, Charlou Park Addition, known as 6464 Rim Road, with a residence to be constructed thereon by Rush for the agreed price of $63,000.00. Among other things the agreement provided:

"Title shall be merchantable in the seller. * * * the seller shall execute and deliver a good and sufficient warranty deed to said purchaser on or before January 10, 1956 * * *.

*    *    *

"* * * Prior to delivery of deed seller shall furnish waivers or releases of any and all mechanics' and materialmen's liens from any and all contractors, * * *."

Rush completed the residence and on March 23, 1956, executed and tendered to Miller a warranty deed. At that time there was due and unpaid on the agreed price $25,000.00, and this amount was on that date paid by Miller to Rush and the deed delivered. Simultaneous with delivery of the deed and payment of the balance due and as a condition of making the payment, Miller required Rush to execute and deliver to him a written "LIEN WAIVER" which is as follows:

"The undersigned does hereby waive, relinquish and absolutely release forever, all right now existing or which may hereafter accrue under the laws of the State of Colorado to claim mechanic's or materialman's lien or liens against the property described as follows:

Plot 6, Charlou Park Addition, Arapahoe County, Colorado, together with the improvements thereon, known as and numbered 6464 Rim Road, Englewood, by virtue of work done and material furnished, and does hereby represent that all amounts due sub-contractors, materialmen and workmen employed by or working under the undersigned have been fully paid, and

that all bills contracted by, through or under the undersigned for labor or materials which might become the subject of a mechanic's or materialman's lien or liens have been fully paid."

On May 14, 1956, Pyramid Lumber and Supplies, Inc., and Hy Scott commenced an action against Miller and Rush. Each plaintiff alleged that they had furnished materials for the residence built on Plot 6, had recorded lien statements and each sought foreclosure. An additional lien claimant was permitted to intervene.

Miller, seeking to clear the property of the liens, filed a motion in the case seeking foreclosure. He requested permission to deposit with the court $14,000.00, an amount more than sufficient to pay the lien claims, and requested that on making the deposit an order be entered directing that the liens be released and that the claimants have recourse to the cash deposit in lieu of the real estate. By stipulation and order entered pursuant thereto the money was deposited and the liens on the real property released.

Rush answered the complaints of the lien holders and put in issue the amounts due. Miller filed his answer and cross-claim. His answer denied the claims of the lien holders; his denial was based on the fact that he was without knowledge with reference thereto.

For cross-claim against Rush, Miller set forth his contract with Rush and further alleged that:

"3. [Set forth in full is the above quoted lien waiver.]

\*　　\*　　\*

"5. By virtue of the written instruments referred to in Paragraphs 1, [contract of sale], 2 [warranty deed] and 3 [lien waiver] above, Defendant Paul Rush is liable to Defendant William D. Miller for any and all sums which Defendant William D. Miller is or may become obligated to pay to Plaintiffs, or any of them, in or by reason of the within action.

"WHEREFORE, Defendant William D. Miller prays the Court to enter Judgment in his favor against De-

fendant Paul Rush in the amount of any Judgment entered in favor of plaintiffs, or any of them, against Defendant William D. Miller in the within action, for his costs expended herein, and for such other or further relief as may to the Court seem proper."

On November 5, 1956, by agreement of all parties, findings and judgment were entered adjudicating all of the rights and duties of the parties asserted in the pleadings. Each lien holder had judgment for a specified amount and the amounts specified were paid out of the $14,000.00 deposit and the judgments satisfied.

The findings and judgment further provided that:

"8. [Finding] That satisfaction of the judgments in favor of said plaintiffs from and out of the sums heretofore deposited in the Registry of this Court by Defendant William D. Miller is ordered without waiver, release or settlement by Defendant William D. Miller with respect to any claim or claims of any nature whatsoever which he has or may have against Defendant Paul Rush; that Defendant Paul Rush owes to Defendant William D. Miller the sum of $11,400 on account of plaintiffs' said lien claims, said sum being the amount herein ordered paid by Defendant William D. Miller to satisfy the amounts owing from Defendant Paul Rush to plaintiffs; that Defendant William D. Miller is entitled to judgment against Defendant Paul Rush in the amount of $11,400.

\* \* \*

"5. [Judgment] Defendant William D. Miller have judgment and judgment is hereby entered against Defendant Paul Rush in the amount of $11,400, together with interest at the rate of six per cent per annum until satisfied."

The judgment that Miller obtained against Rush (1956) was partially satisfied in 1958 by payment to Miller of $6807.00. Miller, on November 4, 1960, filed a motion for supplementary proceedings under Rule 69, R.C.P. Colo., seeking to make discovery of assets of

Rush that might be available for satisfaction of the balance due on the judgment. On presentation of this motion the trial court, ex parte and without notice, entered an order directing Rush to appear on November 25, 1960, and respond to said motion and order. (The record before us is silent as to whether Rush did or did not appear on the 25th, or at all.)

On November 29, 1960, Rush filed a debtor's petition in bankruptcy. Among debts listed is:

"26. Miller, William c/o Holland & Hart, Equitable Building, Denver, Colorado — 1956 at Denver, Colorado — unliquidated judgment — damages 5,000.00"

On February 23, 1961, Miller filed his verified "PROOF OF CLAIM IN BANKRUPTCY" wherein it is stated:

"3. That the consideration of said debt is as follows: The unpaid principal amount, interests and costs as of the date of bankruptcy of a judgment of $11,400.00 rendered in the District Court in and for the County of Arapahoe, Colorado, Civil Action No. 12053, based upon deponent's claim against the bankrupt for the *obtaining of money or property of deponent by false pretenses or false representations.*

"4. That no part of the said debt or liability has been paid except the sum of Six Thousand Eight Hundred Seven Dollars on December 5, 1958.

\* \* \*

"8. This claim is filed as an unsecured, secured, priority claim." (Emphasis supplied.)

On July 18, 1961, the referee in bankruptcy entered his order "DISCHARGE OF BANKRUPT" wherein appears the following:

"It further appearing that, after due notice by mail, objection to the discharge of said bankrupt was filed within the time fixed by the court; which after hearing was overruled;

"IT IS ORDERED that the said PAUL EUGENE RUSH be, and he hereby is, discharged from all debts

and claims which, by the Act of Congress relating to Bankruptcy, are made provable against his estate, except such debts as are, by said Act, excepted from the operation of a discharge in bankruptcy."

On December 5, 1960, Rush filed his "PETITION TO TERMINATE HEARING." (The hearing ordered November 4, 1960, for November 25, 1960.) The purpose of the petition was to obtain an order directing that no further efforts be made to collect on the judgment. Therein Rush alleges that he had filed his petition in bankruptcy and scheduled Miller's judgment as one of his debts, and that further "inquiry as to this court is moot."

This petition was set for hearing for May 25, 1962, at which time, and after full argument, the court stated:

"THE COURT: The Court finds that Civil Action No. 12053 was litigated, and that judgment entered therein on November 5, 1956; that there is no finding in that judgment that sounded in fraud; there has been no appeal; there has been no action.

"The Court further finds that there was a claim filed in the Bankruptcy Court setting out that the claim was based on the obtaining of money or property by false pretenses or false representations; that there is no indication that the Bankruptcy Court did not proceed to discharge this debt along with all others.

"It is the position of the trial court that the matter may not be relitigated in this Court, and that the discharge of the bankrupt act effects a bar."

On June 4, 1962, Miller filed his motion for new trial or rehearing. On August 15, 1962, this motion was denied and the court ordered:

"IT IS THEREFORE ORDERED AND ADJUDGED that the collection of the judgment is barred by the discharge in bankruptcy * * *."

Miller is here by writ of error seeking reversal, contending that the trial court should conduct a hearing on the true nature of Miller's claim and find that the judg-

ment is based on fraud and therefor nondischargeable and enter an order that Miller be authorized to proceed to collect on his judgment.

■ Only one question is presented here, and that is: May a court which has entered a judgment go outside of the record to determine whether the judgment is discharged by a general order of discharge in bankruptcy proceeding instituted by the judgment debtor, and in which proceeding the judgment creditor has filed a claim on its judgment alleged to be based upon the bankrupt's obtaining money by false pretenses and representations?

Many courts have considered this matter under varying circumstances and are at wide variance in their opinions.

Three conclusions have been reached:

1. The judgment is conclusive and the court may not go behind it to determine the facts on which predicated.

2. Review of the whole record of the case may be had to determine the real nature of the claim which was reduced to judgment.

3. Not only review of the whole record may be had, but the court may go outside thereof to determine the nature of the claim (this is a decided minority view).

Miller here urges that we should follow the minority rule. The trial judge refused to go outside of the record to determine the real basis of the judgment.

At the time judgment was entered (1956) in favor of Miller and against Rush, there was not one word in the record then before the trial judge concerning fraud or misrepresentation. Miller, in filing his cross-claim against Rush, could have sought actual damages for fraud, he could have demanded exemplary damages and a body judgment. He elected to forego these remedies and sought and obtained judgment for damages arising out of breach of contract.

In *National Finance Company of Provo v. Daley*, 14 Utah (2d) 263, 382 P.2d 405 (1963), a judgment had

been obtained on a promissory note. In the opinion it is stated:

"National * * * sued in this action on a prior judgment it had taken against the defendants in January, 1959, * * *. [Presumably a foreign judgment.] It is admitted that no issue of fraud was raised, nor was any mention made of it in the case resulting in the judgment in question. * * *."

For answer to the complaint the defendants pleaded a discharge in bankruptcy. For reply National alleged that the debt which was reduced to judgment was one arising out of the fraud of the defendants, consequently not dischargeable in bankruptcy. The defendants moved for judgment on the pleadings. This motion was denied and on review by the Supreme Court of Utah was ordered granted. The court said:

"The question of critical importance here is whether, in determining dischargeability of a judgment, the Court should look only to the judgment and the record of the case upon which it is based, or may go back of the judgment and examine issues not raised in that proceeding. There is a division among the authorities on this problem. The view is sometimes expressed that once the claim is reduced to judgment, the obligation is fused into the judgment, which is a shield beyond which no search may be made. On the other view, that the Court may look behind the judgment, there is further division as to whether the inquiry must be confined to the record of the proceeding which produced the judgment or may go beyond that record and examine into matters not litigated in that action.

* * *

"* * * The generally recognized rule of procedure is that where the parties have had an opportunity to present their case and judgment is rendered it becomes binding upon them, both as to the issues that were tried

and those that were triable in that proceeding, and that they are precluded from further litigating the matter.

"In our judgment it better comports with the orderly processes of justice to require the plaintiff to bear the responsibility of pleading, proving and claiming the full benefit of whatever character of cause of action he possesses in the original action and of being bound thereby, than to allow another trial upon the same cause of action raising issues which could have been dealt with in the original action. This rule also serves the purposes of the bankruptcy act and at the same time leaves the way open to guard against the discharge of debts of the character excepted from discharge if the facts so justify."

We subscribe to the foregoing.

Colorado has in effect renounced the minority.

In *Valdez v. Sams*, 134 Colo. 488, 307 P.2d 189, Valdez had obtained a judgment against Sams for injuries and damages resulting from an automobile collision. In the complaint Valdez charged Sams with negligence

"* * * consisting of a reckless or willful disregard of the right or safety of others."

Sams did not defend and his default was entered. The trial court took evidence "to determine what judgment should be entered." No findings were made as to the alleged recklessness and wantonness of Sams' actions. Compensatory damages only were awarded.

Later Sams filed a petition in bankruptcy and listed the Valdez judgment as a debt. Valdez appeared in the bankruptcy proceedings and filed a petition resisting Sams' efforts to be discharged. This petition was denied by the referee

"* * * without prejudice to any rights that may inhere in the petitioners, or any of them, under the provisions of Section 17 of the Bankruptcy Act."

Sams was discharged in bankruptcy and thereafter Valdez undertook by garnishment proceedings to collect

on the judgment. The trial court prohibited Valdez from further efforts to collect and decreed that:

"* * * judgment entered herein be deemed discharged by the aforesaid bankruptcy * * *."

On review this court said:

"Question to be Determined.

"Where in an action to recover judgment for damages resulting from an automobile collision, the complaint contains an allegation that the defendant was guilty of negligence consisting of a 'reckless or willful disregard of the right or safety of others'; and where default of defendant was entered and thereafter the court heard evidence in support of the allegation of the complaint and entered judgment without specifically finding that more than simple negligence was shown, and without an award for exemplary damages or execution against the body; is the debt evidenced by the judgment an obligation which is extinguished by a discharge in bankruptcy?

"The question is answered in the affirmative. Examination of the record in this action leads to the conclusion that the trial court entered judgment based upon simple negligence. If plaintiffs desired to protect themselves against the possibility that defendant might seek a discharge in bankruptcy, it was incumbent on them to secure a specific finding in the trial court that the negligence of defendant was such that a discharge in bankruptcy would not operate to release the judgment. No such finding was made."

In *Valdez,* supra, the court had before it allegations sufficient, if proven, to warrant the entry of a judgment that would not be dischargeable in bankruptcy. Here, the court had no such allegations before it, and could not on the pleadings and proof have entered a non-dischargeable judgment. If *Valdez,* supra, is to be sustained, then a fortiori the judgment here must be sustained.

We are not unmindful of the fact that several courts

follow the minority rule, which sanctions proceedings aliunde and dehors the record in order to get at the true nature of the debt. To that we do not subscribe.

We see no useful purpose in seeking to analyze, discuss or distinguish the numerous cases cited by counsel for Miller. Leading cases referred to are: *Levin v. Singer,* 227 Md. 47, 175 A. (2d) 423, and *Fidelity and Casualty Co. v. Golombosky,* 133 Conn. 317, 50 A. (2d) 817 (annotated in 170 A.L.R. 368). They follow the minority rule, which we reject.

The judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE FRANTZ concur.