COLE, Administratrix *v.* WILBANKS, Etc. et al.

[No. 325, September Term, 1960.]

*Decided June 21, 1961.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Archie D. Williams,* with whom were *Williams & Murphy* on the brief, for the appellant.

36

*A. Jerome Diener,* with whom were *Marvin E. Brave* and *Silbert & Gomborov* on the brief, for Triangle Discount Corporation, one of the appellees.

No brief and no appearance for Wilbanks, etc., the other appellee.

PER CURIAM.

Appellant is the administratrix of her son's estate. He had purchased an automobile on conditional contract of sale by which he agreed to pay the automobile dealer, the seller, "or his assigns," fifty-nine biweekly installments of $60.00 each and a final installment of $21.00 in return for conveyance of the title to the automobile, and the issuance of two insurance policies, one for fire, theft and $50 deductible collision insurance, and one of life insurance for a term of one year on the life of the buyer in an amount which would cover the balance on the purchase price of the car due and unpaid at the time of death. The contract, including title to the car, was assigned to a finance company. About three weeks after the execution of the contract, the finance company wrote the car buyer two letters. The first, dated August 12, 1959, enclosed a fire, theft and $50 deductible insurance policy and said: "We are unable to obtain life insurance on your account and will give credit for same on your account." The second letter dated August 14, 1959, was as follows:

> "Upon auditing your finance transaction on your 1957 Cadillac which you recently purchased from Johnny's Used Cars, we found that we were unable to obtain life insurance on your account.
>
> "We have credited your account with the amount necessary to correct it, and are enclosing a new payment book containing the revised schedule of payments. Please use this new book in connection with all future payments and destroy the one you originally received."

The new payment card (sometimes referred to as the payment book) dated the same day as the second letter, contained

a revised schedule of fifty-seven (instead of fifty-nine) installments of $60.00 each and a final payment of $54.11, or a total of $3,474.11 instead of the $3,561.00 called for by the original agreement. The buyer made the biweekly payments of $60.00 to the finance company rather regularly, using the new payment card (the amounts paid were entered on the card) until he committed suicide on June 17, 1960.

The administratrix claimed that upon her son's death the balance due had been paid by the life insurance proceeds. The dealer and the finance company asserted that the original agreement as to insurance had been superseded by a second agreement that there would be no insurance and that the total amount payable would be $86.89 less than originally called for. They demanded continued payments or the return of the car. The administratrix filed a petition against the dealer and the finance company for a declaratory judgment as to the respective rights of the parties. Judge Harlan declared that the original contract had been modified by mutual agreement to eliminate the provision as to life insurance and that title to the automobile remained in the finance company subject to the performance by the administratrix of the terms of the modified contract.

Appellant urges in this Court, as she did below, that the letters of the finance company amounted to no more than an effort to unilaterally alter or modify a valid subsisting contract and were without effect on the obligation to insure the life of her son. The appellees contended below and contend here that the finance company, by its letter of August 14, 1959, made an offer to modify or supersede the original contract so as to eliminate the insurance and that the buyer accepted when he made the payments using the new payment card, which recited the new payment schedule. They agree that the buyer was not obliged to accept the new offer and that the requisites for the formation of a contract had to exist before a new agreement, which modified or discharged the original undertakings, came into being. They find these requisites of a contract in the finance company's offer, its instructions to the buyer as to how the offer should be ac-

cepted (that is, the destruction of the old payment card and the use of the new one in the making of fewer payments now proposed) and the buyer's following of the instructions.

The parties to a contract may agree to vary its terms and enter into a new contract embodying the changes agreed upon and a subsequent modification of a written contract may be established by a preponderance of the evidence. Assent to an offer to vary, modify or change a contract may be implied and found from circumstances and the conduct of the parties showing acquiescence or agreement. *Hercules Powder Co. v. Harry T. Campbell Sons Co.*, 156 Md. 346, 362; *Freeman v. Stanbern Construction Co.*, 205 Md. 71, 78; *Williams v. Maryland Glass Corp.*, 134 Md. 320; Restatement, *Contracts*, Sec. 408; 6 Corbin, *Contracts*, Sec. 1293.

We think that there was enough to permit Judge Harlan to find, as he did, that there had been "a novation or revision of the agreement" and that the buyer's consent to the modification had been made manifest by his actions in making the payments under the new schedule, knowing they did not provide life insurance.

*Judgment affirmed, with costs.*