## I. W. BERMAN PROPERTIES *v.* PORTER BROTHERS, INC.

[No. 216, September Term, 1974.]

*Decided September 8, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Richard I. Kovelant* and *Audrey E. Melbourne,* with whom were *Melbourne, Fried & Goldman* and *Joseph G. Finnerty, Jr.,* and *Piper & Marbury* on the brief, for appellant.

*Glenn W. Trimmer,* with whom were *Robert W. Fox* and *Rollins, Smalkin, Weston & Andrew* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court.

This controversy presents questions of whether the parties — the owner and a contractor — to two separate contracts for the construction, respectively, of a group of stores and of a parking deck in a shopping center, agreed to a novation of contract, whether in a suit at law to recover the monies owed, the contractor was properly allowed prejudgment interest and whether interest upon the judgment entered was allowable upon the interest included in the judgment.

I. W. Berman Properties (Berman), the appellant, the owner of the shopping center in Laurel, Maryland, planned

to erect a third section of that shopping center and construct thereon a single tier parking deck. Porter Brothers, Inc. (Porter), the appellee, which had previously constructed a building in the shopping center for the appellants and had constructed other improvements elsewhere for Berman was contacted. Following negotiations over a period of from four to six months the parties entered into two separate written contracts, both dated June 9, 1970.

The first contract — for the construction of the parking deck — provided that the appellee would perform such work in consideration of the payment to it of "[a] sum equal to 5% of all construction costs incurred by the Contractor from his Sub-Contractors and also from all work performed by the Contractor's field crews." This agreement was amended on June 21, 1970 to provide that the total costs to be paid by the owner, including the contractor's (cost plus) fee would not exceed "in the aggregate" the sum of $210,389. While the construction of the parking deck was underway, on January 11, 1971 additional work in the amount of $8,211 was authorized, thus fixing the owner's total liability under that contract at $218,600. The second contract — for the construction of an appurtenant section of stores in the shopping center also provided that the appellee be paid on a cost-plus basis — "[a] sum equal to 10% of all construction costs incurred," etc.

Both contracts on the standard form of the American Institute of Architects, contained identical provisions pertaining to the schedule of payments to the appellee. Porter was to deliver to Berman's architect, between the first and seventh of each month, a statement "showing in detail and as completely as possible all monies paid out by him on account of the cost of the work during the previous month for which he is to be reimbursed." Upon approval, the architect was to "promptly issue certificates to the Owner for all such [payments] as he approves, which certificates [were] payable on issuance."

The appellee began work on the store construction shortly after the execution of the agreement on June 9, 1970; construction on the parking deck began shortly after the

execution of the amended contract on July 21, 1970. During the course of construction certain problems developed between Berman and Porter in regard to the allocation of costs to the respective projects and the documentation of those costs. Berman was apprehensive about the ultimate costs of both projects. Discussions ensued between the parties in the late fall of 1970 concerning the possibility of combining both projects and making them the subject of a new contract. During the period December 3 to 10, 1970, after the store drawings had been completed, Porter undertook to "firm up" the proposals received from its subcontractors in order to better ascertain the estimated final total costs under both contracts. After meetings held on December 8 and 10, 1970, Porter, after consultation with Berman's project manager, submitted a "work sheet" to Berman under which, as an "educated guess" — "because of all the unknowns and variables," it set forth a budget estimate in the total amount of $840,300 for completion of both construction projects. Both the appellant and appellee agree that this proposal was not accepted by the appellant; Mr. Berman felt that the amount was excessive and there was no "upset price" specified.[1] On December 19, 1970, the parties met again, at which time Berman, hoping to reduce costs, deleted certain items from the project, namely: some macadam paving, the substitution of tile for carpeting, the deletion of a wiring system for music and the elimination of planting and landscaping.

By a letter dated the same day, addressed to Porter and signed by Vincent Leahy, general manager of the appellant, Berman wrote as follows:

> "As a result of our meeting today *we agreed* to proceed as follows:
> "1. Both the building and parking lot deck will be combined and treated as one job and the total cost to be $810,000.00 tops. Whatever has been paid to date to you is to be credited against this price.

---

1. Described as meaning "not to exceed a certain amount."

"2. We will receive monthly detailed accountings as we have in the past.

"3. Any additions to the work requested and or approved by us will be added at a cost plus ten percent basis and any deletions from the work will be deducted in the same way.

"4. At the end of the job after a complete accounting on a total cost of the job plus ten per cent, any savings on the above $810,000.00 will be passed on to us." (emphasis added)

The construction continued, apparently without any reference to the proposal set forth in the letter of December 19, 1970 with the appellee periodically submitting its bills and supporting documents, and the architect approving the payments up until June, 1971, when the parking deck had been constructed and the "shells" of the stores had been erected, but the tenants had not yet been secured. There was no further work for Porter to perform. When Porter in that month submitted its last invoices and made a request for payment, Berman refused to pay, and Porter instituted suit in the Circuit Court for Prince George's County on January 25, 1972. After extensive pleadings the case was tried in that court before Judge William B. Bowie, without the intervention of a jury, under a second amended declaration filed on August 13, 1974, in which the appellee alleged that the appellant had breached its contracts by refusing to pay as provided in the two separate agreements, alleged that it had performed all the conditions of the contracts and had properly submitted its applications for payment. It requested that interest be allowed on the unpaid balances from August 1, 1971.

It was stipulated between the parties, prior to trial, that the total costs for the construction of both projects did not exceed $848,018.03 and that Berman had paid Porter, up until June 1971, a total of $771,417.71.

Judge Bowie rejected the appellant's contention that a novation had resulted from the letter of December 19, 1970, finding that the terms of that letter never had been accepted by the appellee.

The trial court further found that a balance was due the appellee of $34,324.08 under its contract for the construction of the parking deck, and that it was due $42,276.24 under its contract to construct the stores — a total of $76,600.32. Allowing interest as prayed at the rate of 6% per year from August 1, 1971, (amounting to $13,788.00), judgment *nisi* was entered on August 28, 1974 in favor of the appellee in the total amount of $90,388.32, with interest from date and costs.[2]

In their direct appeal here, the appellant strenuously argues: (a) that the trial court erred in concluding that there was no subsequent agreement between the parties which amounted to a novation, thereby extinguishing the two prior contracts, (b) the trial court erred in not permitting the appellant's architect to testify that the plans were sufficiently complete to enable the builder to ascertain the costs, (c) that the lower court abused its discretion in awarding pre-judgment interest and (d) that the award of pre-judgment interest coupled with the award of interest on the judgment had the effect of compounding the interest and exceeding the legal rate of interest.

(a)

Basically, the appellant argues that the lower court should have given credibility to its witnesses, rather than those of the appellee, and should have found as a fact that there was a subsequent agreement between the parties, modifying the original two contracts. Their factual argument, set out in their brief, is as follows:

"[The] intent to enter into a new agreement, as well as the existence of the new agreement was evidenced by the following: First, both parties acknowledged that problems existed as to the proper allocation of costs and materials between the deck construction and store construction. Second, both parties acknowledged discussions

---

2. After a motion for new trial had been heard and denied, the judgment became final on September 10, 1974.

concerning the combination of these two related projects into one agreement. Third, Porter secured final sub-contractor proposals during December 3-10, 1970, so that a new agreement could be entered into. Fourth, a proposal was submitted to Berman for a lump sum price of $840,000.00, which proposal was rejected by Berman because the price was too high and Berman desired an "upset" figure. Fifth, a meeting was subsequently held wherein Berman deleted certain work from the store construction and made 'allowances for certain work yet to be performed.' Sixth, a meeting was held on December 19, 1970, wherein Berman *discussed* with Porter an upset price of $810,000.00 for the project. Seventh, the confirmatory letter was prepared and sent by Berman stating the agreement reached by the parties. *Eighth, Porter's failure to reject this letter or otherwise indicate its non-acceptance.* Ninth, Porter's election to continue with the project with the full knowledge of Berman's proposal. Tenth, the adaptation by Porter of the $810,000.00 contract figure, subsequent to December 19, 1970, when Porter informed Berman of further additional costs, which would be incurred on the project." (emphasis added)

A "novation" is a new contractual relation made with intent to extinguish a contract already in existence. It "contains four essential requisites: (1) a previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract, and (4) the extinguishment of the old contract, by the substitution of the new one." *BarGale Industries, Inc. v. Robert Realty Co., Inc.*, 275 Md. 638, 646, 343 A.2d 529, 535; *Leisner v. Finnerty*, 252 Md. 558, 250 A. 2d 641 (1969); *Hudson v. Md. State Housing Co.*, 207 Md. 320, 114 A. 2d 421 (1955); *Baltimore Academy of the Visitation v. Schapiro*, 169 Md. 332, 181 A. 731 (1935). *See also* 6 A. Corbin, *Contracts* § 1297, et seq. (1962).

"For a novation to exist, there must be [evidence of] an

agreement among the parties to extinguish the old obligation[s] and substitute a new one for it." *Adler v. Walker & Dunlop, Inc.,* 245 Md. 153, 159, 225 A. 2d 459, 462 (1967); *Hudson v. Md. State Housing Company, supra;* and *District Nat'l Bank of Washington v. Mordecai,* 133 Md. 419, 105 A. 586 (1919).

A novation is never presumed; the party asserting it must establish clearly and satisfactorily that there was an intention, concurred in by all the parties, that the existing obligation be discharged by the new obligation. *Harford Bank of Bel Air v. Hopper's Estate,* 169 Md. 314, 330, 181 A. 751, 758 (1935); *District Nat'l. Bank of Washington v. Mordecai, supra.* As was stated in *Mordecai,* "[I]t does not result from the substitution of one paper writing for another, or one evidence of debt for another, or one contract for another, unless such substitution is made with the intention of all the parties concerned to extinguish the old one," 133 Md. at 427, 105 A. at 588.

The intention to substitute a new agreement for a previous contract need not be expressed however, since facts and circumstances surrounding the transaction, as well as the subsequent conduct by the parties, may show such an acceptance as clearly as an express agreement; but such facts and circumstances, when shown, must be such to establish that the intention to work a novation is clearly implied. *Leisner v. Finnerty, supra,* 252 Md. at 565, 250 A. 2d at 645 (1969), citing *Cole, Adm'x. v. Wilbanks,* 226 Md. 34, 171 A. 2d 711 (1961); *Swift v. Allan,* 211 Md. 588, 594, 128 A. 2d 260, 263 (1957); 2 S. Williston, *Contracts* § 353, at 816 (3d ed. 1959).

In *Cole, Adm'x. v. Wilbanks, supra,* our predecessors in discussing evidence which was sufficient for the trial court to have found "a novation or revision of the agreement," stated:

> "The parties to a contract may agree to vary its terms and enter into a new contract embodying the changes agreed upon and a subsequent modification of a written contract may be established by a preponderance of the evidence. Assent to an offer to

vary, modify or change a contract may be implied and found from circumstances and the conduct of the parties showing acquiescence or agreement. *Hercules Powder Co. v. Harry T. Campbell Sons Co.,* 156 Md. 346, 362; *Freeman v. Stanbern Construction Co.,* 205 Md. 71, 78; *Williams v. Maryland Glass Corp.,* 134 Md. 320; Restatement, *Contracts,* Sec. 408; 6 Corbin, *Contracts,* Sec. 1293." 226 Md. at 38, 171 A. 2d at 712-13.

Where the evidence is in conflict, the issue of whether or not there was a novation is one of fact for the jury, or the court sitting as a jury. *Safe Deposit and Trust Co. v. Strauff,* 171 Md. 305, 189 A. 195 (1937); *District Nat'l. Bank of Washington v. Mordecai, supra.*

*See also Duplex Envelope Co. v. Balt. Post Co.,* 163 Md. 596, 605, 163 A. 688, 691 (1933), where the plaintiff, having signed a paper writing previously signed by the defendant, returned it to the defendant in a letter modifying the terms contained in the writing; and it was held that whether the defendant had accepted the offer as modified by the plaintiff's letter was for the jury to decide, since if the jury found that there had been an acceptance, the contract would then have been evidenced not only by the paper writing but by the letter as well comprising a "single document."

When James Porter, appellee's president, testified he acknowledged that he had heard the amount of $810,000 "mentioned in a meeting," that it was "arrived at through Berman's calculations;" that he had discussed the proposal with Paul W. Madigan, the appellant's "estimator and project manager" and knew for a fact that Madigan did not agree with the $810,000 figure proposed. It was Porter's testimony that he never "agreed" that both the building and the parking deck would be combined and completed for $810,000 "tops." Acknowledging that he did not respond to Leahy's letter in writing, he stated that he did telephone him and "told him he was crazy and [that] we would not sign the letter." This testimony was uncontradicted by Leahy, who, when he testified could not fully explain the import of the $810,000 figure.

There was no other evidence elicited during the trial of any circumstances or conduct on the part of Porter to indicate that the proposal set forth in the letter was ever accepted by the appellee. The work continued in the same fashion after December 19, 1970 with the vouchers and invoices, totalling more than $810,000 being submitted to and approved by the appellant's architect.

The trial court in concluding that the proposal submitted by the letter of December 19, 1970 — by which "we [Berman] agreed" that the contract for the stores and the parking deck "will be combined and treated as one job and the total cost to be $810,000.00 tops" was never accepted by the appellee, found that Porter's testimony was "more articulate, direct and clear to the point than any of the other witnesses." Thus, upon the trial court's finding of fact that the letter of December 19, 1970 was "never accepted," the appellant's eighth premise in its syllogism — "Porter's failure to reject this letter or otherwise indicate its non-acceptance" — contradicted by evidence found by the trial court to be credible and entitled to weight destroys the factual conclusion urged by the appellant.

The circumstances that meetings were held, that prices were discussed and that letters were written — without evidence establishing an agreement by the parties in no way suffices to show that "the intention to work a novation is clearly implied." Such meetings, discussions and correspondence fall short of establishing by a preponderance of the evidence that Porter acquiesced in, agreed to or accepted the proposal. This conclusion is buttressed when considered with the evidence that just nine days prior to the date of the letter Porter, after consulting with Madigan, made an "educated guess" of an estimate in the amount of $840,300 for completion of both projects.

Since one of the essential requisites for a novation — the agreement of all the parties to the new contract — was not established, there was factually no novation.

Seizing upon isolated remarks of the trial court in its summation, the appellants obliquely further contend that the trial court committed an error of law in holding that any

such new agreement was required to be evidenced by a notation in writing. The trial court, in its oral opinion, stated:

"But, nevertheless, as we understand it, if you are going to charge a party with a certain position on a contract *the party to be charged must make some notation in writing, it seems to me, to bind him.* I am not saying under certain circumstances they couldn't bind themselves in some other manner, but I am saying in this case it seems to me when that letter went out — and we find that the explanation was an honest one, a forthright one. Mr. Porter says if he had it to do over again maybe he would have rejected this December 19 letter right away. Apparently he found it so absurd, as he testified, that he told, I think, one of the Berman brothers that he was crazy; this just wasn't so; this figure of $810,000 wouldn't stand." (emphasis added)

We do not read these remarks by the trial court as a holding that a notation in writing was required, as a matter of law, to establish an agreement by Porter to a novation. This statement — lifted from the court's entire summation — recorded what seems to us to have been a verbal analysis of the evidence as to that phase of the case. What the trial court obviously implied was that if there had been a notation in writing made by Porter, such notation would have been binding, and that absent such evidence Porter's "forthright" and "honest" testimony convinced the court that Berman's proposal had been orally rejected.

Since the trial court concluded that there was no agreement — in writing or otherwise — to establish a novation, a view that any such agreement must be expressed in writing was immaterial to the decision and mere surplusage. *See Leisner v. Finnerty, supra.*

Assuming *arguendo,* however, that such conclusion by the trial court was erroneous, this Court will not reverse for an error by the lower court unless that error is "both

manifestly wrong and substantially injurious." *Rotwein v. Bogart,* 227 Md. 434, 437, 177 A. 2d 258, 260 (1962). An error which does not affect the outcome of the case is "harmless error." *Master Royalties Corp. v. Mayor & City Council of Baltimore,* 235 Md. 74, 96, 200 A. 2d 652, 664 (1964).

The trial court was the judge not only of the credibility of the witnesses, but also the judge of the weight to be given the evidence. *Knowles v. Binford,* 268 Md. 2, 11, 298 A. 2d 862, 866 (1973). In our review of the case we must consider the evidence produced at the trial in a light most favorable to the appellee, the prevailing party, and if substantial evidence was presented in support of the trial court's determination, this Court cannot say that such conclusion was clearly erroneous. *Delmarva Drilling Co., Inc. v. Tuckahoe Shopping Center, Inc.,* 268 Md. 417, 424, 302 A. 2d 37, 40 (1973).

Applying this test, and giving due regard to the opportunity of the lower court to pass upon the credibility of the witnesses and the weight to be given the testimony, we hold that the finding by that court that there was no agreement by Porter to combine the two separate contracts for the construction of the stores and for the erection of the parking deck into a new agreement and to perform the work on both projects for a maximum of $810,000 was not clearly erroneous. Maryland Rule 886. *BarGale Industries, Inc. v. Robert Realty Company, Inc., supra; First Nat'l Bank of Southern Md. v. U. S. F. & G.,* 275 Md. 400, 340 A. 2d 275 (1975).

(b)

Ancillary to the question of "novation" the appellant contends that it was error for the trial court to refuse to allow its architect, John H. Bennett, to testify as an expert building contractor in order to show that the plans were sufficiently complete to have enabled the appellee, as a builder, to have ascertained the costs.

The determination by the trial court of "the experiential qualifications of a witness will only be disturbed on appeal if there has been a clear showing of abuse of the trial court's

discretion." *Continental Ins. Co. v. Kouwenhoven,* 242 Md. 115, 126, 218 A. 2d 11, 17 (1966), citing *Turner v. State Roads Comm'n.,* 213 Md. 428, 433, 132 A. 2d 455, 457 (1957). *See also* 2 J. Wigmore, *Evidence* § 561, at 643 (3d ed. 1940).

The trial court ruled that the witness was not shown to be qualified to testify as an expert builder since he admitted that he had never been "an individual builder," that the last time he had supervised construction of any type of building was for another contractor 30 years previously, and that he acknowledged that he had never been engaged as a "contractor . . . [who was building] a shopping center." In addition to holding that the witness was not shown to be qualified to express an opinion as to what a builder "could or could not have done," the trial court questioned the probative value that such testimony would have.

In *Stickell v. City of Baltimore,* 252 Md. 464, 250 A. 2d 541 (1969), when we held that there was no reversible error by the trial court in refusing to permit a witness who was unable to give a definition of "fair market value" to testify in a condemnation case as an expert appraiser, Judge Barnes, in writing for the Court, stated:

> "The competency of an expert witness to testify as to matters within his expertise is generally a preliminary question for the court. *Levine v. Moreland,* 229 Md. 231, 182 A. 2d 484 (1962); *Yudkin v. State,* 229 Md. 223, 182 A. 2d 798 (1962); *Rotwein v. Bogart,* 227 Md. 434, 177 A. 2d 258 (1962); *Pumphrey v. State Roads Commission,* 175 Md. 498, 2 A. 2d 668 (1938); see also 31 Am. Jur. 2d, *Evidence* § 31 at 532 (1967). It is well established that a person must demonstrate a minimal amount of competence or "expertise" on the subject on which he is allegedly an expert in order to be qualified to testify as an expert witness. Cf. *Rotwein v. Bogart,* 227 Md. 434, 177 A. 2d 258 (1962). Accordingly, the determination of whether a witness is qualified as an expert witness is generally within the discretion of the court, and will not be overturned unless his discretion has been manifestly abused to the

prejudice of the complaining party. *M. A. Realty Co. v. State Roads Commission*, 247 Md. 522, 233 A. 2d 793 (1967); *State Roads Commission v. Creswell*, 235 Md. 222, 201 A. 2d 328 (1964); *Turner v. State Roads Commission*, 213 Md. 438, 132 A. 2d 455 (1957). Thus, in the *M. A. Realty* case, we stated:

'Questions in regard to the qualification of an alleged expert witness are largely in the discretion of the trial court and the court's determination of whether the witness is qualified will only be disturbed on appeal if there has been a clear showing of abuse of the trial court's discretion.' (247 Md. at 526, 233 A. 2d at 796.)" 252 Md. at 471-72, 250 A. 2d 545.

*See also Rotwein v. Bogart, supra,* where the witness, submitted as an expert had been engaged full time for 22 years in the lumber business and had at the same time been a partner in a floor-laying business. Although he had supervised the laying of floors in approximately 200 homes as a partner in the floor-laying business, he did not lay any of the floors himself, and it was held not to have been error when the trial court permitted him to testify as an expert in the lumber business but refused to permit him to testify as an expert in "floor laying."

In exercising the wide discretion vested in the trial courts concerning the admissibility of expert testimony, a critical test is "whether the expert's opinion will aid the trier of fact." *Consolidated Mech. Contrs., Inc. v. Ball,* 263 Md. 328, 338, 283 A. 2d 154, 159 (1971); *Continental Ins. Co. v. Kouwenhoven, supra; Rotwein v. Bogart, supra; see also Franceschina v. Hope,* 267 Md. 632, 642, 298 A. 2d 400, 406 (1973); citing *Shivers v. Carnaggio,* 223 Md. 585, 588, 165 A. 2d 898, 900 (1960).

Since the critical question for determination of the trial court was whether or not Porter had accepted the appellant's proposal and that a novation had resulted, the testimony undertaken to be elicited, through Bennett, had he testified as an expert, that the builder (Porter) would have possessed

enough information to make certain the costs of the construction, as we see it, would have done nothing to assist the trier of fact in determining factually whether the appellee had agreed to accept a new contract for the two existing ones.

We conclude that there was no abuse of discretion by the trial court's ruling concerning Bennett's lack of qualifications as an expert witness in constructing buildings, and that there was no prejudice to the appellant by such ruling.

(c)

The appellant, conceding that an award of prejudgment interest "is permissible when the obligation owed is for a sum certain, and is also permissible when the agreement specifically provides for the payment of interest in the event of default," contends that the trial court abused its discretion in awarding interest to the appellee in the amount of $13,788.00 (at 6% per annum, from August 1, 1971) on the principal sum of $76,600.32, which was found to be due and payable under the two contracts.

They quote from *Newson v. Douglas*, 7 H. & J. 417 (1826), as set forth in *State, Use Of Havre de Grace v. Fahey*, 108 Md. 533, 540, 70 A. 218, 221 (1908), as follows:

> " 'There are indeed cases not to speak of bonds, &c., in which interest is recoverable as of right. Such as on a contract in writing to pay money on a certain day; as in the case of a bill of exchange or a promissory note, or on a contract for the payment of interest, or where the money claimed has actually been used. But with such exceptions, it has long been the settled practice of the Courts of this State, to refer the question of interest entirely to the jury, who may allow it or not in the shape of damages, according to the equity and justice appearing between the parties on a consideration of all the circumstances of the particular case as disclosed at the trial.' "

Premising its argument upon the holdings in *Taylor v. Wahby*, 271 Md. 101, 314 A. 2d 100 (1974) and *Cook v. Toney*, 245 Md. 42, 224 A. 2d 857 (1966), the appellant asserts that the appellee's claim was "unliquidated and not reasonably ascertainable until [the rendition of] the verdict," that "according to the equity and justice appearing between the parties" interest should only have been awarded from the date of the judgment and that when the trial court awarded prejudgment interest it abused the discretion reposed in it. Its reliance, however, upon these two latter holdings is misplaced, since both involved tort actions. *Taylor v. Wahby* concerned a tortious interference and conspiracy to interfere with the appellee's real estate listing contract and his right to commissions, and "the usual tort rule in regard to unliquidated claims for damages" was applied. *Cole v. Toney* involved unliquidated damages for personal injuries sustained in an automobile accident and the allowance of interest following a retrial of the case. In *Taylor v. Wahby, supra,* however, citing *Robt. C. Herd & Co., Inc. v. Krawill Mach. Corp.*, 256 F. 2d 946, 952 (4th Cir. 1958), *aff'd* 359 U. S. 297 (1959), it was recognized that interest is recoverable as a matter of right in a tort action for the conversion of a chattel where the value of goods converted have "a readily ascertainable market value." *See also Saunders v. Mullinix*, 195 Md. 235, 240, 72 A. 2d 720, 722 (1950); *Merchants Nat'l. Bank v. Williams*, 110 Md. 334, 352, 72 A. 1114, 1117-18 (1909); *Seaboard Airline Railway Company v. Phillips*, 108 Md. 285, 296, 70 A. 232, 237 (1908) and *Andrews v. Clark*, 72 Md. 396, 440, 20 A. 429, 434 (1890), cited in *Krawill, supra,* and here erroneously relied upon by the appellant since each involved an action of tortious conversion.

Generally, interest is not an inseparable and invariable incident of claims for money or unliquidated accounts, *City Pass. Rwy. Co. v. Sewell*, 37 Md. 443, 452 (1873), it is recoverable as a matter of right under contracts in writing to pay money on a day certain, such as bills of exchange or promissory notes, *Isle of Thye Land Co. v. Whisman*, 262 Md. 682, 708-09, 279 A. 2d 484, 498 (1971); *Robt. C. Herd & Co., Inc. v. Krawill Mach. Corp., supra; Affiliated Distillers*

*Brands Corp. v. R. W.L. Wine & Liquor Co., Inc.*, 213 Md. 509, 516, 132 A. 2d 582, 586 (1957); in actions on bonds, *Mullen Contracting Co. v. International Business Machs. Corp.*, 220 Md. 248, 262, 151 A. 2d 906, 914 (1959), *Kasten Constr. Co. v. Anne Arundel County*, 262 Md. 482, 489-90, 278 A. 2d .282, 286-87 (1971); *Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co., Inc., supra;* in actions under contracts providing for the payment of interest, *Isle of Thye Land Co. v. Whisman, supra,* see *Robt. C. Herd & Co., Inc. v. Krawill Mach. Corp., supra;* in cases where the money claimed has been actually used by the other party, *Charles County Broadcasting Co., Inc. v. Meares*, 270 Md. 321, 332, 311 A. 2d 27, 34 (1973); *Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co., Inc., supra;* and in cases upon sums payable as rent, *Eidelman v. Walker & Dunlop, Inc.*, 265 Md. 538, 545, 290 A. 2d 780, 784 (1972). *See also Brown v. Bradshaw*, 245 Md. 524, 539, 226 A. 2d 565, 573 (1967).

In *City Pass. Rwy. Co. v. Sewell, supra,* our predecessors stated:

> "It must be conceded that interest is not [a]n inseparable and invariable incident of claims for money, or unliquidated accounts. 'It is recoverable as of right, upon contracts in writing to pay money upon a day certain; as upon bills of exchange and promissory notes, or on contracts for the payment of interest, or where the money claimed has been actually used, and upon bonds, etc., but in other cases, *it is a question entirely for the jury to be decided according to the equities of the transaction.'* *Newson v. Douglass*, 7 H. & J. 417; *Karthaus v. Owings*, 2 G. & J. 430." 37 Md. at 452 (emphasis in original).

In *Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co., Inc., supra,* where the amount due the appellant from the appellee, its former distributor, became "certain, definite and liquidated" by a day certain and thus due and payable by that date, but where the appellee had withheld payment under a claim found to be without legal

justification and had had use of the sums since that date, prejudgment interest was held to have been properly allowable; Judge Prescott, who delivered the opinion for the Court, stated:

"The law in Maryland with reference to interest is well settled. The general rule is that interest should be left to the discretion of the jury, or the Court when sitting as a jury. However, this general rule is subject to certain exceptions that are as well established as the rule itself. Among the exceptions are cases on bonds, or on contracts, to pay money on a day certain, and cases where the money has been used. If the contractual obligation be unilateral and is to pay a liquidated sum of money at a certain time, interest is almost universally allowed from the time when its payment was due. *Weant v. Southern Tr. Co.*, 112 Md. 463, 473, 77 A. 289; *Picking v. Local Loan Co.*, 185 Md. 253, 44 A. 2d 462. Cf. 30 *Am. Jur., Interest*, par. 7; *Williston on Contracts*, Vol. 5, pars. 1410, 1413; *Sedgwick on Damages*, par. 301; *Maryland Lumber Co. v. White*, 205 Md. 180, 197, 198, 107 A. 2d 73; *Shipley v. Meadowbrook Club*, 211 Md. 142, 151, 126 A. 2d 288." 213 Md. at 516-17, 132 A. 2d at 586.

This concise statement of the rule was quoted with approval in *Atlantic States Const. Co. v. Drummond & Co.*, 251 Md. 77, 85, 246 A. 2d 251, 255 (1968) (where a shopping center had been completed by the appellant and the appellee had installed the paving, all of which had been approved and accepted by the architect and the owner, but where the owner had become insolvent, and it was held that under the terms of the contract between the appellant and the appellee, the amount due the appellee became due and payable on the insolvency of the owner and that the trial court, in the exercise of its discretion, should have allowed interest on the amount owed the appellee); in *A. & A. Masonry Contrs., Inc. v. Polinger*, 259 Md. 199, 203-04, 269 A. 2d 566, 569 (1970) (where it was held in a suit by the

appellants for labor and materials furnished in connection with the construction of an apartment-hotel, that the trial court had not abused its discretion "in not including interest on the sums he allowed in the judgment" in view of the dispute between the parties as to whether the amount for which damages were claimed was encompassed within the contract of the parties, or whether it had been performed as an "extra" in the course of construction); in *St. Paul at Chase v. Mfrs. Life Ins. Co.*, 262 Md. 192, 235-36, 278 A. 2d 12, 32-33, *cert. denied*, 404 U. S. 857 (1971) (where it was held to have been no abuse of discretion where the trial judge allowed prejudgment interest on a deficiency decree from the date of the entry of that decree down to the date of the judgment, but refused to award such interest "on any other phases" of the case); and in *Isle of Thye Land Co. v. Whisman, supra*, (where a contract expressly provided for payment of interest on a certain sum of money from a specified date if the decedent or his administrator should so elect, and where the defendant debtors denied the administratrix of the decedent the right to so elect).

The same principle was noted in *Kasten Constr. Co. v. Anne Arundel County, supra*, (in a suit by the County against the contractor upon a surety bond where the appellant failed to complete the construction of certain roads and storm drainage in a real estate development in the County); and in *Mullen Contracting Company v. International Business Machs. Corp.*, 220 Md. 248, 261-62, 151 A. 2d 906, 914 (1959) (where prejudgment interest was held allowable as of right in a suit brought against the general contractor and its sureties on a performance and payment bond, by a supplier of materials to a subcontractor who had failed to pay the balance due for the materials supplied him).

There is, of course, a presumption that the discretion vested in the trial court "was not abused but was exercised with just regard to the rights and interest of both the plaintiff and the defendants," *Moreland, Inc. v. Moreland*, 175 Md. 145, 149, 199 A. 871, 872 (1938), thus the burden is upon the appellant of establishing that "according to the

equity and justice appearing between the parties on a consideration of all the circumstances of the particular case as disclosed at the trial," the trial court abused its discretion and worked an injustice to the appellant by its award of interest. *See State, Use Of Havre de Grace v. Fahey, supra; see also Bucher v. Federal Baseball Club of Balto., Inc.,* 130 Md. 635, 643-44, 101 A. 534, 538 (1917).

It is well established that this Court will not reverse a discretionary action of a trial court unless such discretion has been abused; this "does not necessarily mean, however, that where the action of the lower court is clearly arbitrary or has no sound basis in law or in reason, it could not be reviewed, but it does mean that we will not reverse the judgment of the trial court, unless there is grave reason for doing so." *Northwestern Nat'l. Ins. Co. v. Samuel R. Rosoff, Ltd.,* 195 Md. 421, 434, 73 A. 2d 461, 466 (1950).

In its discretionary grant of interest to the appellee, as we review the facts, the trial court was entitled to consider: that as of June, 1971, under the express terms of each of the contracts between the parties, the principal sums the court found owing to the appellee, were "sums certain," and were payable to it by the appellant upon certification by the appellant's architect, who had approved the vouchers and invoices of the appellee; that the appellee had performed the work under cost-plus contracts and had, in effect, used its own funds for the enhancement in value of the appellant's shopping center, and that the parking deck and the stores had been in use for the benefit of the appellant for at least three years. The court could thus have considered that the appellants "were using monies wrongfully withheld from [Porter] to their own advantage during a period of spiralling interest rates"; *see St. Paul at Chase Corp. v. Mfrs. Life Ins. Co., supra,* 262 Md. at 234, 278 A. 2d at 32. Additionally, the trial court could have considered that between the time the appellee's vouchers and invoices were payable in June, 1971, the appellant had not undertaken, at any time up until the verdict to make a tender, even of the $38,582.29 concededly owed the appellee under its theory of the case, *i.e.,* that there had been a novation to perform both projects at an "upset

price" of $810,000. *See Forwood v. Magness*, 143 Md. 1, 6, 121 A. 855, 856 (1923), holding that a valid tender will prevent the running of interest subsequent to such tender.

We conclude, upon our review of the evidence, that in awarding interest from August 1, 1971, as prayed by the appellee, up until the entry of judgment *nisi* on August 28, 1974, the trial court did not abuse its discretion and did so "according to the equity and justice appearing between the parties on a consideration of all the circumstances ... as disclosed at the trial." *See Affiliated Distillers Brands Corp. v. R.W.L. Wine & Liquor Co., Inc., supra; Atlantic States Const. Co. v. Drummond & Co., supra.* We do not find the dispute between the parties to have been as it was in *A. & A. Masonry Contrs., Inc. v. Polinger, supra.*

The fact that the amounts claimed by the appellee in its second amended declaration, upon which the case was tried, exceeded the amount of the principal sums found due it by the trial court did not operate *per se* as a denial of interest on that part of its claim which it established to the satisfaction of the court. *See Robt. C. Herd & Co., Inc. v. Krawill Mach. Corp., supra,* recognizing that "a plaintiff might in justice have disentitled himself as to interest as to some part of his claim, without affecting other parts." *Id.* at 954.

(d)

Lastly, the appellant contends that the interest allowed on the total of the judgment (at 6% until paid), including the prejudgment interest allowed, had the effect of "compounding the interest" and thus exceeded the lawful rate allowed, contrary to the provision of Art. III, §57 of the Maryland Constitution.

Maryland Rule 642 provides as follows:

"A judgment by confession or by default shall be so entered as to carry interest from the time the judgment was rendered. A judgment on verdict shall be so entered as to carry interest from the date on which the verdict was rendered. A

judgment *nisi* entered by the court following a special verdict pursuant to Rule 560 (Special Verdict) or trial by the court without a jury pursuant to Rule 564 (Trial by the Court) shall be so entered as to carry interest from the date of the entry of judgment *nisi*."

When the trial court directed the entry of judgment *nisi*, it stated: "All right, Madam Clerk, I gave the judgment figure, the principal [$76,600.32]; the interest is $13,788.00. The total judgment is $90,388.32. . . . With interest from date and cost[s]."

Art. III, §57 of our Constitution (Maryland Code 1957, 1972 Repl. Vol.) reads: "The Legal Rate of Interest shall be *Six percent. per annum*; unless otherwise provided by the General Assembly." [3]

In applying the provisions of the Rule 642 to the interest entered upon a judgment *nisi*, the Courts of this State "have uniformly inferred that the interest rate to be charged is the legal rate . . . six percent per annum." *Paape v. Grimes*, 256 Md. 490, 494, 260 A. 2d 644, 646 (1970) citing *United States v. Swift & Co.*, 152 F. Supp. 738 (D. Md. 1957), *aff'd* 257 F. 2d 787 (4th Cir. 1958), *cert. denied* 358 U. S. 837 (1958); *Picking v. Local Loan Co.*, 185 Md. 253, 44 A. 2d 462 (1945).

In *Rayner v. Bryson*, 29 Md. 473, (1868), our predecessors, in holding that upon a bill in equity for an accounting for dividends received, interest could be computed by the auditor from the time the dividends were received up to the time of the stating of the account and from that time until paid, interest could be allowed only on the principal sum found due, stated:

"The order is, however, erroneous in directing

---

**3.** Maryland Code (1957, 1972 Repl. Vol. [1974 Cum. Supp.]) Art. 49, §3, as it read at the time of these proceedings in the lower court limited the lawful rate of interest to six percent; it additionally provided that interest may be charged at a rate not in excess of eight percent per annum under an agreement in writing between a lender and a borrower. *See also* Art. 49, §13, enacted by Ch. 420 of the Laws of 1974, permitting interest not in excess of ten percent per annum under an agreement in writing between the lender and the borrower in connection with loans secured by a first mortgage or first deed of trust on residential real property or any interest therein.

*interest* to be paid on the aggregate amount of principal *and interest* found due by the account, until paid. It is true that *in judgments at law the interest on the debt may be calculated down to the date of the judgment, and the whole will then bear interest from that date,* but this is the effect of an express statutory provision, (Code, Art. 27 [sic], sec. 15,) which has never been extended to decrees in equity on bills to account, where the account embraces charges of interest. The rule in Maryland, in such cases, is correctly stated by Chancellor Bland, in *Winder v. Diffenderffer,* 2 Bland, 204: 'On a bill for an account for the recovery of a legacy or the like, where interest is allowed, it is computed by the auditor from the time the money became due, up to the time of stating the account, with interest on the *principal sum only,* from that time until paid.' " 29 Md. at 482-83. (emphasis added)

As pointed out by the Court, the allowance upon a judgment at law of interest upon the total judgment, including prejudgment interest, was based upon an express statutory provision then codified as Code (1860) Art. 29, § 15 [4] which provided as follows: "All judgments by confession on verdict, or by default, shall be so entered as to carry interest from the time they were rendered." That provision, later codified in Code (1951) Art. 26, § 17, was subsequently repealed by Ch. 399 of the Laws of 1957 in view of the adoption of Rule 642, effective January 1, 1957, in substitution thereof.

The Rule adopted pursuant to Art. IV, § 18A of the Maryland Constitution had the force of law. *Hill v. State,* 218 Md. 120, 127, 145 A. 2d 445, 449 (1958). Within its authorized scope it was "legislative in nature." *Ginnavan v. Silverstone,* 246 Md. 500, 504-05, 229 A. 2d 124, 126 (1967). The application of the Rule is limited to judgments at law, as was the antecedent statute.

---

4. Although the opinion in Rayner v. Bryson, 29 Md. at 473, designates the Code provision as Art. 27, this is apparently a typographical error.

The purpose of the allowance of prejudgment interest is to compensate the aggrieved party for the loss of the use of the principal liquidated sum found due it and the loss of income from such funds. The purpose of post-judgment interest is obviously to compensate the successful suitor for the same loss of the use of the monies represented by the judgment in its favor, and the loss of income thereon, between the time of the entry of the judgment *nisi* — when there is a judicial determination of the monies owed it — and the satisfaction of the judgment by payment.

We are not here dealing with the compound calculation of a single form of interest; when the trial court, in the exercise of its discretion, awarded prejudgment interest in the sum of $13,788.00, this amount became included in the judgment *nisi* and constituted a part of the liquidated total sum found to be due by the appellant for its breach of the contracts. Its inclusion in the judgment *nisi* upon which post-judgment interest is allowable under Rule 642, at six percent per annum, does not result in a compounding of the lawful rate of interest as prescribed in Art. III, §57 of the Maryland Constitution.

As authority for its contention that interest applied to a judgment under Rule 642, which contains within it prejudgment interest, had the effect of compounding interest and thus was in contravention of the constitutional provision, the appellant relies heavily upon language in *Mobray v. Lechie*, 42 Md. 474 (1875), where it was stated at 479:

> "The Circuit Court ascertained the amount of principal and interests to the date of the decree to be $1640.87, and decreed that interest should be paid on that sum from the date of the decree. In this respect we think the decree is erroneous, this appellant ought not to be compelled to pay compound interest; only the original mortgage debt ought to bear interest."

In that case this Court reversed the decree entered by the Circuit Court for Dorchester County, sitting in equity, which

had found a default under a valid mortgage agreement and having ascertained the amount of principal and interest up to the date of the decree, further decreed that interest should be paid on the sum so ascertained, from the date of the decree.

This holding is inapplicable here, since these proceedings involve a judgment at law and are consistent with the holdings in *Rayner v. Bryson, supra.* To the extent that the appellant confuses judgments at law with decrees in equity, as pointed out in *Rayner v. Bryson, supra,* their reliance upon *Mobray v. Lechie,* is obviously misplaced. The appellant's argument, though novel, we find to be without merit.

> *Judgment affirmed; costs to be paid by appellant.*