VIMCO CONCRETE ACCESSORIES, INC. ET AL. *v.*
JOSEPH R. MAGGITTI

[No. 211, September Term, 1979.]

*Decided November 9, 1979.*

The cause was argued before MOYLAN, LOWE and
MACDANIEL, JJ.

*William O. Lockwood,* with whom were *Quinn, Scanlin,
Maiberger & Lockwood* on the brief, for appellants.

*C. J. Vaughey* and *Joseph J. D'Erasmo* for appellee.

LOWE, J., delivered the opinion of the Court.

Joseph R. Maggitti (appellee), a branch manager of Vimco Concrete Accessories, Inc. (appellant [1]), voluntarily resigned on August 8, 1975, after more than 10 years employment. He had been a member of a company sponsored profit sharing and trust plan since its inception effective January 31, 1966. Following his voluntary termination of employment Maggitti, technically if not effectively, competed with Vimco through a partly owned company of which he was president. The question decided by Judge Nathaniel W. Hopper in the Circuit Court for Anne Arundel County, and to be decided here is whether such competition forfeited his rights to his interest in the profit sharing and trust plan or whether those rights vested upon his voluntary resignation.

The decision depended upon an interpretation of the Profit Sharing and Trust Agreement which said in pertinent part:

"5.05 *Termination of Employment* —

(a) If the employment of a Member shall have ceased through no fault of the Member, ... the entire interest in the Fund then allocated to his account shall become vested. ...

(b) If the employment of a Member shall be terminated by the Company for proven dishonesty, ... disloyalty, ... gross insubordination, the commission of a crime, wilful destruction of the Company's property or the property of an affiliated company, wilful and deliberate injury to an Employee of the Company, or if a participant enters into competition with the Company as an owner or Employee, all of the net value of the Fund credited to such Member's account of the last preceding valuation date shall be forfeited . . . .

---

1. Appellants also included the trustees of a Profit Sharing and Trust Agreement of the company.

(c) If a Member's employment shall terminate prior to retirement for any reason other than those specifically covered elsewhere in this Article V, his severance benefit shall be as follows: ...."

At the conclusion of appellee's trial at which he sought the benefits to which he claimed entitlement upon severance, the court held that there were only two methods by which employment termination was contemplated by the plan: 1) termination by the company for one of the specified causes in § 5.05 (b) which would effect a forfeiture, and 2) a no fault termination which would vest the member's interest. The judge believed that a § (b) termination had as a condition precedent *termination by the company* and, therefore, the competition clause therein was inapplicable to appellee who had voluntarily quit.

Appellant complains that this is an erroneous interpretation in that the use of a disjunctive ("or") preceding the competition clause provides an alternate to the specified company initiated termination, *i.e.,* that a member forfeits if he is fired for cause, *or* if at any time after leaving Vimco for any reason, he competes. Appellant notes that a definition in Article I provides support for that interpretation when it defines

"[t]he term 'if the employment of a Member shall have ceased through fault of his own' shall mean voluntary termination of employment on the part of the Employee ...."

Assuming ambiguity, we do not find the trial judge's interpretation to be wrong.

The use of the disjunctive "or" was necessary to establish that each one of the eight causa improbitas for company termination was separately a reason for forfeiture, rather than using the conjunctive which would have compelled all eight to have been the cause of dismissal by Vimco to effect a forfeiture. There was no alternative to the holding that for a subsection (b) termination, company dismissal was a prerequisite.

The definition in Article I is without persuasive effect. Initially it should be noted that subsection (c) provides entitlement to a member terminated "for any reasons other than those specifically covered elsewhere in this Article V". It does not provide disentitlement for terminations elsewhere in the agreement. Beyond that, the language being defined is nowhere found in § 5.05.

The key to the interpretation of § 5.05 (a) and (b) is in the succeeding subsection 5.05 (c) which addresses the "severance benefits". Subsection (c) interprets (b) just as the trial judge did. It describes the fund as a "severance benefit" contemplating vestiture upon severance. That term in itself shows that the draftsmen did not intend the vesting or forfeiture to hang in abeyance to some undefined period subsequent to termination. It conditionally provides the specified "severance benefit",

> "[i]f a Member's employment shall terminate prior
> to retirement for any reason other than those
> specifically covered elsewhere in this Article V . . . ."

It establishes what shall vest item by item, and when it vests (at severance). Subsection (c) does not contain any divesting language such as — unless he ever thereafter competes, etc. Obviously, if the fund vests upon severance, it cannot be subsequently divested to effect a forfeiture without so specifying.

— the cross-appeal —

Despite having won the war, Maggitti complains that he has lost two of the battles. In computing the value of his share of the plan, the court awarded Maggitti 90% of his account balance which would have matured to 100% under the formula set forth in § 5.05 (c) [2] only if he had "[t]en or more years of continuous participation in the Plan".

---

2. Section 5.05 (c) reads in full as follows:

"If a Member's employment shall terminate prior to retirement for any reason other than those specifically covered elsewhere in this Article V, his severance benefit shall be as follows: (1) the

It was conceded that the "account balance" was $14,974.46. The judge noted that § 2.01 provided that employees become members of the plan as of the effective date and that Article I defined "Effective date" as January 31, 1966, and "Anniversary Date" as each January 31 thereafter. Because Maggitti had 9 rather than 10 "January 31sts" thereafter,

> ". . . the Court computes this time [as] nine (9) years but less than ten (10) full years as scheduled in (c) of *Section 5.05.* And under that schedule the Plaintiff would have a 90% vested interest."

Maggitti argues that he was employed from May 1, 1965 to August 8, 1975, a period of 10 years and 3 months. Although the plan did not go into effect until January 31, 1966, which appears to place Maggitti in "Nine but less than ten full years of continuous participation in the Plan" as the judge decided, Maggitti contends that Vimco credited him with a share of the 1965 profits on the "effective date" January 31, 1966. In Maggitti's words,

> ". . . it is the contention of the cross-appellant that the anniversary date of the plan is not the

---

amount of his contributions to the Fund plus (2) simple interest at the rate of three percent (3%) per annum, on his contributions, plus (3) an amount equal to the following percentage of the net value of his account on the valuation date next preceding the date of termination of membership; after first deducting the sum of items (1) and (2) above:

| | |
|---|---|
| Less than three full years of continuous participation in the Plan | *NONE* |
| Three but less than four full year[s] of continuous participation in the Plan | *30%* |
| Four but less than five full years of continuous participation in the Plan | *40%* |
| Five but less than six full years of continuous participation in the Plan | *50%* |
| Six but less than seven full years of continuous participation in the Plan | *60%* |
| Seven but less than eight full years of continuous participation in the Plan | *70%* |
| Eight but less than nine full years of continuous participation in the Plan | *80%* |
| Nine but less than ten full years of continuous participation in the Plan | *90%* |
| Ten or more years of continuous participation in the Plan. | *100%"* |

> determining factor in arriving at the value of the cross-appellant's share of the plan, but the determining factor is the number of years of continuous participation . . . ."

The trial judge did not agree, was not aware, or did not acknowledge the argument that because an initial deposit was made on the day of the plan's execution that all employees would have celebrated at that time one full year of participation in the plan on the day of its inception.

Maggitti's reasoning would be persuasive if his evidence were more conclusive, but the testimony to which he points in the transcript is only to the effect that Vimco made contribution in its employees' behalf from the 1965 profits. Conceding that however (which Vimco seems to do), the 1965 contribution enuring to Maggitti for 1965 appears to have been less than a full year's contribution since Maggitti did not commence work for Vimco until May 1, 1965. Inferentially then, the judge could have disregarded the 1965 year's contribution as something less than a full year's participation just as he more obviously disregarded the portion of appellant's last year of employment (because he had resigned on August 8, 1975).

While it is conceivable, and even likely, that appellant had been credited with his service for a portion of 1965, there was no evidence of any contribution or "participation" on Maggitti's behalf in the plan beyond January 31, 1975.[3] It seems obvious that there could have been no "participation" by Maggitti in the 1975 profits because profits were not known until the end of the year after his employment had terminated. Therefore, even if the judge were inclined to tack the 1965 portion of employment, for which there was evidence of "participation," to the portion of 1975 during which Maggitti was employed (to August 8, 1975), there is no evidence of "continuous participation" beyond January 31st of that year. There is only evidence of employment. With these legitimate inferences available from the testimony, we cannot find the court to have been clearly erroneous.

---

3. This was by way of a statement of Maggitti's account "as of January 31st, 1975", admitted as Plaintiff's Exhibit No. 2.

182

Finally, Maggitti complains that he was entitled to interest on the money to which he was entitled upon severance from the date of termination (August 8, 1975) to judgment day. Prejudgment interest, however, is a matter of discretion with the factfinder, *I. W. Berman Prop. v. Porter Bros.,* 276 Md. 1, 18 (1975), and there is a presumption that a judge's discretion

> " 'was not abused but was exercised with just regard to the rights and interest of both the plaintiff and the defendants,' . . . ." *Id.* at 19, quoting *Moreland, Inc. v. Moreland,* 175 Md. 145, 149 (1938).

The burden is thus upon an appellant (or cross-appellant) to establish that the trial court abused its discretion and worked an injustice to the (cross) appellant by its award — or failure to award — interest. *Id.* at 19-20.

> *Judgment affirmed.*
> *Costs to be divided equally between the parties.*